United States District Court
Southern District of Texas
**ENTERED**
September 23, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN GABRIEL CISNEROS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:18-cv-24 |
| | § | CRIM. ACTION NO. 1:94-181-12 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On February 5, 2018, Petitioner Juan Gabriel Cisneros filed a motion to vacate, set aside or correct his sentence, in Criminal Case 1:94-181-12, pursuant to 42 U.S.C. § 2255. Dkt. No. 1.

On July 9, 2019, the Court held an evidentiary hearing on Cisneros's claims. The parties have filed post-hearing briefs. Dkt. Nos. 101, 106, 117, 126, 135, 139, 140, 146.

After reviewing the record and relevant case law, it is recommended that the petition be denied because Cisneros's claims are not supported by the record.

## I. Background

As might be expected in a 25-year old drug conspiracy case, the facts are extensive and the appeals and proceedings somewhat confusing. Nevertheless, the facts are set out in chronological order.

### A. Indictment, Plea, and Sentencing

On April 4, 1995, a federal grand jury – sitting in Brownsville, Texas – returned a superseding indictment in criminal docket number 1:94-181. U.S. v. Cisneros, Criminal No. 1:94-181-12, Dkt. No. 152 (J. Vela, presiding) (hereafter "CR"). That superseding indictment charged twenty counts against thirteen defendants. Id. As relevant here, Juan Gabriel Cisneros was indicted for three counts of possession with the intent to distribute more than 100 kilograms of marihuana; one count of conspiracy to possess with intent to distribute more than 1,000 kilograms of marihuana; and, one count of money laundering.

Id.  His brother, Javier Rojas Cisneros, was a co-defendant, as was Ivo Perez. Id.  The Cisneros brothers had not been defendants in the original indictment. CR Dkt. No. 1.

Cisneros has raised two claims to relief that presently require factual supplementation to resolve: (1) that his lawyer was ineffective for recommending that Cisneros reject a plea offer from the Government; and (2) that there was an undisclosed agreement between a co-defendant and the Government, where that witness would receive a more favorable plea agreement than was disclosed to the jury.  The Court will only recount the facts of the trial as they relate to the substance of these claims.

### 1. Rejecting the Plea Agreement

Under the law in effect at the time, if a defendant was convicted of certain drug dealing offenses, after two or more prior felony drug convictions, then they faced a mandatory sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (1994).  However, the Court could not sentence a defendant to an enhanced sentence, based upon that statute, "unless before trial, or before entry of a plea of guilty," the Government filed a notice of information with the Court of the previous convictions. 21 U.S.C. § 851(a)(1).[1]

On June 1, 1995, the Government filed an information of prior convictions, pursuant to 21 U.S.C. § 851. CR Dkt. No. 335.  In that list of prior convictions, the Government alleged that Cisneros had a federal "felony drug conviction from Corpus Christi in C-89-138 for a marihuana offense" and "a state drug case from Falfurrias from approximately January of 1988 involving felony amounts of marihuana." CR Dkt. No. 335.  In the latter case, Cisneros received a deferred adjudication ("the deferred adjudication").

At that time, the question of whether a deferred adjudication counted as a prior conviction, for § 851 sentencing enhancements, was an open legal question in the Fifth

---

[1] Cisneros refers to this entire process as an "851 enhancement."  The Fifth Circuit has inter-changeably referred to this process as an "841 enhancement" and an "851 enhancement." Compare U.S. v. Walker, 294 Fed. App'x. 121, 122 (5th Cir. 2008) (unpubl.) (841 enhancement) and U.S. v. Gonzalez, 493 Fed. App'x. 541, 544-45 (5th Cir. 2012) (unpubl.) (851 enhancement). For the sake of consistency with Cisneros's phrasing, the Court will refer to this process as an § 851 enhancement.

Circuit.  If that deferred adjudication was considered a prior felony drug conviction, Cisneros faced a mandatory life sentence upon conviction in the instant case.

In a 1998 <u>habeas</u> petition, which followed an earlier <u>habeas</u> petition in which Cisneros challenged federal jurisdiction over the offense, Cisneros alleged that Garza told him that the Government was "willing to discuss a plea deal." <u>Cisneros v. U.S.</u>, Civil Case No. 1:96-196, Dkt. No 11, p. 12 (hereafter "<u>Second Habeas</u>").  Under the proposed terms of the alleged deal, the Government would not seek the § 851 enhancement and Cisneros would be required to fully cooperate with the Government. <u>Id.</u>, pp. 12-13.  Cisneros alleged that Garza advised him not to take the deal, because his deferred adjudication case would not count as a prior conviction for § 851 purposes. <u>Id.</u>, pp. 26-27.  Indeed, in the 1998 petition, Cisneros states that he did not enter into the plea agreement because Garza's advice led him to believe that "he would not be exposed to the mandatory life imprisonment sentence based upon such prior conviction." <u>Id.</u>, p. 27.

In his testimony at the July 2019 evidentiary hearing, Cisneros testified that Garza "never" informed him that the "filing of an 851 motion could implicate a mandatory life sentence." Dkt. No. 86, pp. 114-15.  Rather, Cisneros claimed that Garza explained that a § 851 motion "was [a] tool used by the Government to increase a sentence." <u>Id.</u>

Cisneros claimed that he was offered a plea bargain where he would receive a sentence of 20 years in exchange for his truthful cooperation, but that Garza told him he would receive the same sentence whether he pled guilty or went to trial. Dkt. No. 86, p. 114.  In contrast, Garza testified that it "just doesn't make sense" that he would have told Cisneros that he was looking at a 20-year sentence regardless of whether he pled guilty or went trial. <u>Id.</u>, pp. 81-82.  Cisneros testified that had he been properly advised, he would have taken the plea, because he would have "never" risked a mandatory life sentence. Dkt. No. 86, p. 118.

Garza did admit that he did not believe that the deferred adjudication counted as a prior conviction for § 851 and that he would have informed Cisneros of that belief. Dkt. No. 86, p. 94.

Charles Lewis, the Assistant United States Attorney who prosecuted this case, testified at the July 2019 evidentiary hearing.  Lewis did not remember Garza ever indicating that Cisneros was interested in cooperating and debriefing. Dkt. No. 86, pp. 28-29.  When asked if Garza ever approached him about a plea deal for Cisneros, Lewis testified, "Not only do I not have any recollection of that, I do not think he ever did, meaning Mr. Garza never advised me that Mr. Cisneros, Juan Gabriel Cisneros, wanted to cooperate, debrief, was willing to testify." Id.  As Lewis noted, debriefing would have involved giving evidence against his brother, mother, father and possibly more family members. Id., pp. 28-30.

Garza also testified that he never recalled Cisneros showing any interest in cooperating, but rather remembered Cisneros as "a fighter," who would "fight to defend himself." Dkt. No. 86, p. 80.  Garza added that Cisneros's family, including his brother and mother, also impressed him as fighters. Id. Garza testified that he did not believe that "Cisneros ever indicated to me that he wanted to plead guilty." Dkt. No. 86, p. 96.  Garza noted that Government's case was built on "a lot of snitches [. . .] forgive me for using that word – but, yeah, cooperating co-Defendants." Dkt. No. 86, p. 97.  Garza described Cisneros's attitude as: "he resented that those people [the cooperators] were testifying against him and he was going to fight the case." Id., p. 102.  Garza further stated that "there was never any discussion about [Cisneros] wanting to settle the case." Id., p. 103.

### 2. Arnoldo Belmontes

Arnoldo Belmontes was the second witness to testify at trial during the Government's presentation of evidence. CR Dkt. No. 533, p. 90.  Belmontes testified that when he was a teenager, he began helping his father move marihuana from Mexico to Houston.  Id., pp. 93-103.  At the time of trial, he had done this work for over 15 years. Id.  Belmontes and his father employed drivers who would move the drugs through ranches in South Texas to avoid Border Patrol checkpoints. Id.  Belmontes worked closely with Ivo Perez, one of Cisneros's co-defendants. Id.  In October 1993, Belmontes began working with the Cisneros brothers; Belmontes would pay them $50 to $60 per pound of marihuana that made it to Houston. CR Dkt. No. 533-1, pp. 65-70.

Belmontes testified that he was cooperating with the Government and had pled guilty to conspiring to possess with the intent to distribute marihuana. CR Dkt. No. 533-1, p. 92.  He further testified that in exchange for his truthful testimony, the Government agreed to recommend a sentence of no more than nine years imprisonment. Id., pp. 92-93.

On September 11, 1995, Belmontes was sentenced to 108 months imprisonment – exactly nine years – and five years of supervised release. CR Dkt. No. 522.

On September 26, 1997, Assistant United States Attorney Eric Reed — who was not the prosecutor who reached the plea agreement with Belmontes — filed a motion for a reduction in sentence, pursuant to FED. R. CIV. P. 35. CR Dkt. No. 586.  The motion cited Belmontes's assistance in three cases, other than the Cisneros prosecution, describing his contributions as "accomplished and continuing cooperation." Id.  Lewis, the prosecutor who reached the plea agreement with Belmontes, testified at the 2019 evidentiary hearing that the "motion to reduce was not part of my original plea discussions with Mr. Belmontes." Dkt. No. 86, p. 37.  When Lewis spoke to Reed in 2019, Reed reminded Lewis, that when the two of them spoke in 1997 about the possible sentence reduction, Lewis "was not pleased about the prospect of it being filed." Id.

Cisneros testified that an unidentified man, "Jose Angel", a fellow prisoner with Cisneros, told Cisneros of a secret deal between Belmontes and the Government. Dkt. No. 86, p. 126.  Cisneros testified that Jose Angel was in the county jail at the same time as Belmontes; that Belmontes told Jose Angel that while he [Belmontes] was sentenced to 9 years, "he wasn't going to do more than three because he and his attorney had cut a deal with the Government." Id.

During the July 2019 evidentiary hearing, the Court afforded Cisneros additional time to find and call "Jose Angel" as a witness. Dkt. Nos. 86, p. 145; 88, pp. 1-2; 96, pp. 6-11, 78-79.  Despite the additional time, Cisneros did not call him. See Dkt. No. 88.  In fact, the record does not clearly indicate whether Cisneros's counsel was able to find Jose Angel. See Id. (Cisneros's habeas counsel indicating that he "visited a person who may be" Jose Angel).

Despite the failure to provide the corroborating witness, Cisneros further argues that Assistant U.S. Attorney John Patrick Smith appeared in the drug case as well as the other cases where Belmontes testified, so he must have known about the secret deal. <u>See</u> Dkt. No. 117, p. 11 (stating that while Lewis "may have been surprised" by the Rule 35 motion, Smith "cannot claim the same").  Smith passed away in 2014.[2]

### 3. Sentencing

On June 19, 1995, following a seven day-trial, a jury found Cisneros guilty of all five counts. CR Dkt. No. 376.  On July 19, 1995, Cisneros conspired with eight other people to escape from the Cameron County Jail, where he was being held awaiting sentencing. <u>U.S. v. Cisneros</u>, Criminal Case 4:95-196, Dkt. No. 1 ("escape case").  Cisneros also filed a <u>habeas</u> petition regarding the escape case. <u>Cisneros v. U.S.</u>, Civil Case 1:16-279.  His petition was denied and is currently on appeal to the Fifth Circuit. <u>Id</u>., Dkt. Nos. 77, 88.

Sentencing in the drug case occurred on August 24, 1995. CR Dkt. No. 462.  As to the three counts of possession with the intent to distribute more than 100 kilograms of marihuana, Cisneros was sentenced to 360 months of imprisonment and 8 years of supervised release for each count, with each sentence to be served concurrently.  As for the charge of conspiracy to possess with intent to distribute more than 1,000 kilograms of marihuana, Cisneros was sentenced to life imprisonment; again, the sentence was to be served concurrently with all other sentences. <u>Id</u>.  Finally, as to the conviction for money laundering, Cisneros was sentenced to 240 months of incarceration and three years of supervised release; again, this sentence was to be served concurrently with his other sentences. <u>Id</u>.[3]

The life sentence for conspiring to possess with the intent to distribute a controlled substance was a mandatory life sentence, predicated upon a finding that the deferred adjudication was considered a prior felony drug conviction.

---

[2] His obituary can be found at legacy.com/obituaries/name/john-smith-obituary?pid=171818370.

[3] On November 16, 1995, Cisneros was sentenced to 24 months of incarceration and three years of supervised release in the escape case.  That sentence was to be served consecutively to Cisneros's sentences in the instant case.

**B. Direct Appeal**

On August 31, 1995, Cisneros timely filed a notice of appeal. CR Dkt. No. 467.

As relevant here, Cisneros challenged the imposition of the mandatory life sentence, arguing that a deferred adjudication was not a prior drug conviction. U.S. v. Cisneros, 112 F.3d 1272, 1280 (5th Cir. 1997). This issue had never been decided by the Fifth Circuit. Id. ("This issue is one of first impression in this circuit").

On May 13, 1997, the Fifth Circuit affirmed Cisneros's conviction and sentence. Cisneros, 112 F.3d 1272. The Fifth Circuit found that, because a deferred adjudication under Texas law requires a finding of guilt, it counted as a prior drug conviction for sentencing purposes. Id., at 1280-82.

Cisneros did not file a petition for writ of certiorari with the Supreme Court.

**C. First Habeas Petition**

On September 26, 1996, Cisneros filed a Rule 60(b) motion, relating to the criminal conviction in the drug case. Cisneros v. U.S., Civil No. 1:96-168, Dkt. No. 1 (J. Vela, presiding) ("Civ. Case 168."). Cisneros argued that the Court lacked jurisdiction, because the offense did not occur on federal land. Id. On November 12, 1996, the Court issued an order construing this petition as one filed pursuant to § 2255. Id., Dkt. No. 2. Cisneros was not warned that the Court would be recharacterizing the motion and that it would likely be his only opportunity to collaterally attack his conviction. The Court notes that such warnings were not mandatory at the time and would not be legally mandated until the Supreme Court's decision in Castro v. United States, 540 U.S. 375, 382 (2003).

On February 24, 1997, the District Court consolidated the original Rule 60(b) in the drug case, which by this point had been recharacterized as a § 2255 petition, with a nearly identical filing relating to the escape case. Id., Dkt. No. 5 (this consolidated case is hereafter referred to as "First Habeas"). On that same day, Magistrate Judge John Black issued a report and recommendation, recommending that the consolidated case be dismissed. Civ. Case 168, Dkt. No. 6. In that report and recommendation, Judge Black stated that the "thrust" of the petitions "seems to be that there is no such thing as federal criminal jurisdiction, a proposition so absurd as not to warrant discussion." Id

On March 26, 1997, District Judge Filemon Vela adopted the report and recommendation, dismissing the case. Id., Dkt. No. 10.  On April 8, 1997, Cisneros appealed the dismissal order. Id., Dkt. No. 11.  On September 18, 1997, the District Court denied Cisneros a certificate of appealability. Id, Dkt. No. 14.

On February 20, 1998, the Fifth Circuit sustained the District Court and denied Cisneros a certificate of appealability. Id., Dkt. No. 15.  In that same order, the Fifth Circuit dismissed Cisneros's appeal of his first habeas petition. Id.

### D. Second Habeas Petition

As noted earlier, on April 20, 1998, Cisneros filed a second habeas petition, challenging his conviction and sentence in the drug case.  Second Habeas Dkt. No. 10. Cisneros alleged: (1) that his trial counsel erroneously advised him to reject a plea offer, because the deferred adjudication did not count as a prior conviction for § 851 purposes; (2) trial counsel failed to object to the Court's bolstering witness testimony; (3) counsel refused to allow Cisneros to testify in his own defense; (4) counsel failed to object to erroneous jury instructions; (5) counsel failed to object to certain evidence; (6) counsel failed to fully investigate the case; (7) the jury was given improper instructions; (8) the Court erred by sending entire transcript of certain testimony back to the jury room; and (9) the Court impermissibly bolstered the testimony of Government witnesses. Id.  This petition was not docketed in its own case, but was docketed in Civil 96-196, which was part of the consolidated case in the first habeas petition.

On July 31, 1998, Judge Vela dismissed "all pending motions as moot," including the second habeas petition. Second Habeas Dkt. No. 15.

On August 27, 1998, Cisneros filed a motion for reconsideration of the dismissal of his second habeas petition. Second Habeas Dkt. No. 18.  On October 30, 1998, Judge Vela denied the motion for reconsideration. Id., Dkt. No. 20.

Cisneros appealed the dismissal of the second habeas petition.  On March 9, 2000, the Fifth Circuit denied Cisneros a certificate of appealability, finding that the second habeas petition was an unauthorized "successive" habeas petition.  Second Habeas Dkt. No. 21.

### E. Motion for Relief From Judgment

On April 4, 2013 – after the passage of more than 13 years – Cisneros filed yet another motion seeking relief from judgment, pursuant to FED. R. CIV. P. 60(b)(4). Cisneros v. U.S., Civil Case 1:13-58, Dkt. No. 1 (hereafter "Rule 60"). In that motion, Cisneros asserted that the District Court lacked jurisdiction over his first habeas petition, because his direct appeal was still pending when the first habeas petition was decided. Cisneros also asserted that his first habeas petition should not have been characterized as a habeas petition, because he was not warned that the Court was considering it as a habeas petition. He further asserts that his second habeas petition – the petition filed in April 1998 – was not considered on the merits. Cisneros sought to have the Court vacate the judgment in the first habeas petition, consider his second habeas petition to be his original petition and then to consider that petition on its merits. Id.

On August 20, 2015, the undersigned issued a report and recommendation, which recommended that the motion be dismissed. Rule 60 Dkt. No. 19.  The report and recommendation found that (1) the first habeas petition was properly considered by the district court; (2) the second petition was considered and rejected on its merits; and (3) the motion for relief from judgment was untimely filed. Id.

On October 20, 2015, the district judge adopted the report and recommendation in full, dismissing the motion. Rule 60 Dkt. No. 29.

On November 9, 2015, Cisneros timely appealed the dismissal. Rule 60 Dkt. No. 32.

On December 20, 2016, the Fifth Circuit denied Cisneros a certificate of appealability, affirming the district court's dismissal of the motion. Rule 60 Dkt. No 51. In the order, Judge E. Grady Jolly characterized Cisneros's arguments as follows:

> In his COA motion, Cisneros argues that the district court lacked jurisdiction over his 1996 pro se pleading because his timely notice of appeal and the pendency of his direct appeal divested the district court of jurisdiction to consider the motion, regardless of whether it is considered as a Rule 60(b)(6) motion or as a § 2255 motion.  He further contends that, in light of Castro v. United States, 540 U.S. 375, 382 (2003), the district court erred in recharacterizing his 1996 pro se Rule 60(b)(6) motion as a § 2255 motion

without first warning him about the consequences of the recharacterization, thereby giving him the opportunity to either contest the recharacterization or to withdraw or amend the motion.  Because he did not get such warnings, he asserts, the 28 U.S.C. § 2255 motion he filed in 1998 was improperly considered to be successive.  Additionally, he contends that the district court erred in finding that his 1998 § 2255 motion was adjudicated on the merits. Rule 60 Dkt. No. 51, p. 2.

The Fifth Circuit found that Cisneros had "failed to show that reasonable jurists would find the district court's denial of his Rule 60(b)(4) motion to be debatable or incorrect." Id.

On June 6, 2017, the Supreme Court denied Cisneros's petition for writ of certiorari. Rule 60 Dkt. No. 52.

### F. Motion for Authorization

On July 19, 2017, Cisneros filed a motion with the Fifth Circuit, seeking authorization to file a successive habeas petition, pursuant to § 2255(h). In re: Cisneros, Case No. 17-40758 (5th Cir. 2017).  In his motion, Cisneros argued that while he was seeking authorization, that in the alternative, "he needs no authorization to file a second or successive § 2255 motion, on the basis of Castro v. United States, 540 U.S. 375 (2003), where the district court transformed his Rule 60(b)(6) motion under § 2255 without complying with any of the Castro requirements." Id.

On September 6, 2017, the Fifth Circuit denied the motion as "unnecessary," finding that the first habeas petition "does not count as an initial § 2255 motion under Castro," Id. The Fifth Circuit then found that any subsequent petitions should not have been considered successive and that no authorization was necessary to file a § 2255 petition. Id.  Thus, the Fifth Circuit appeared to overturn its previous rulings that Cisneros's petitions were second or successive petitions.  The Court is bound by this ruling under the mandate rule. See U.S. v. Lee, 358 F.3d 315, 321 (5th Cir. 2004) ("the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.").  Accordingly, the Court will not consider whether the instant petition is a second or successive petition.

In any event and as discussed below, Cisneros filed the instant petition after the Fifth Circuit concluded that the petition is not barred by the successive petition bar.

### G. Current Petition

On February 5, 2018, Cisneros filed the instant § 2255 petition, challenging his conviction and sentence in the drug case. Dkt. No. 1.  In his petition, Cisneros raised the following issues: (1) he received ineffective assistance of counsel; (2) the presiding judge bolstered the testimony of Government witnesses; (3) the jury instructions improperly instructed the jury about the Government's evidentiary burden; (4) the Court sent evidence to the jury during deliberations beyond what the jury requested; (5) the § 851 sentence enhancement is an issue that must be decided by the jury; (6) the imposition of the § 851 enhancement was constitutionally impermissible and constituted unlawful selective prosecution; and (7) he received ineffective assistance of appellate counsel. Id.

On that same day, the Court ordered the Government to file a response to the petition. Dkt. No. 5.

On March 26, 2018, Cisneros filed a supplement to his petition, adding a claim that the Government knowingly suborned perjured testimony, when Belmontes testified that the recommendation for a nine-year sentence was the full extent of his agreement with the Government. Dkt. No. 13.

On July 23, 2018, the Government timely filed its response to the § 2255 petition. Dkt. No. 27.  As relevant here, the Government noted that Cisneros's claims that his lawyer advised him to reject a possible plea bargain and failed to inform him that he was facing a possible mandatory life sentence were not amenable to being resolved solely on the record. Id.  The Government argued that the remaining claims were either procedurally barred or substantively meritless. Id.

On July 24, 2018, the Court set the matter for an evidentiary hearing and appointed counsel for Cisneros. Dkt. No. 29.

On July 9, 2019 – after several continuances – the Court held the evidentiary hearing.  Dkt. No. 86.  Cisneros and Garza both testified during the hearing. Id.

On August 9, 2019, the Court ordered the parties to file post-hearing briefs. Dkt. No. 93.  The Court specifically ordered the parties to address "(1) whether the petition was timely filed in this case and (2) in the event the Court finds that it was not timely filed, if there is a factual and legal basis for equitable tolling." Id.  The Court further advised Cisneros to "raise any and all possibly meritorious issues in his brief, even if those issues were not explored at the evidentiary hearing. Any issue not raised by Cisneros in the briefing shall be considered to have been waived." Id.

On September 30, 2019, Cisneros timely filed his post-hearing brief. Dkt. No. 101. In that brief, Cisneros raised two grounds for relief: (1) Garza was ineffective because he "failed to advise [Cisneros] that his criminal history exposed him to a life sentence"; and (2) "the jury was not told of Mr. Belmontes' actual plea agreement with the Government." Dkt. No. 101.

On November 19, 2019, the Government timely filed its post-hearing brief. Dkt. No. 106.  As to the claim regarding the § 851 enhancement and mandatory life sentence, the Government concedes that the claim is timely filed, but argues that it is not supported by the record.  The Government asserts that Cisneros has not provided credible objective evidence that he was not properly informed of the consequences of the § 851 enhancement or that, given the considerations regarding his relatives and parents, he would have chosen to plead guilty if he had been properly informed.  As to the claim regarding Belmontes's testimony, the Government argues that it is: (1) procedurally defaulted because it should have been raised on direct appeal; (2) is untimely filed; and (3) is substantively meritless. Id.

On January 6, 2020, Cisneros timely filed his post-hearing reply brief. Dkt. No. 117.

On March 27, 2020, the undersigned issued a report and recommendation, which concluded that the claim regarding the § 851 enhancement was timely filed, but not supported by the record. Dkt. No. 118.  As to the claim regarding Belmontes's testimony, it was recommended that the claim be dismissed as untimely filed, or alternatively, denied as meritless. Id.

On April 8, 2020, Cisneros, acting pro se, filed a letter with the Court indicating that his appointed counsel failed to raise several issues in the post-hearing brief, despite Cisneros specifically instructing him to raise those issues. Dkt. No. 121. Cisneros asked the Court to either: (1) order counsel to brief those issues or (2) permit Cisneros to proceed pro se to litigate those issues. Id.

On April 9, 2020, the Court excused Cisneros's appointed counsel from further participation in this case and ordered Cisneros to briefly identify the additional issues that he wished to pursue, beyond the two that appointed counsel had previously briefed. Dkt. No. 123.

On April 29, 2020, Cisneros filed his letter, outlining the additional claims he wishes to pursue: (1) trial counsel was ineffective for failing to object to the trial judge "bolstering" the testimony of Government witnesses; (2) trial counsel was ineffective for failing to challenge the constitutionality and legality of the sentence based on the § 851 enhancement; (3) trial counsel was ineffective for failing to challenge the validity of prior state conviction that formed basis of § 851 enhancement; (4) trial counsel was ineffective for failing to object to jury instructions; (5) trial counsel was ineffective for failing to investigate and interview witnesses; (6) the jury was not properly instructed on the Government's burden of proof; (7) whether the trial judge denied Cisneros due process of law when he interrupted and bolstered government witnesses; (8) Cisneros was denied due process of law when the trial court submitted more information to the jury during deliberations than was originally requested; and, (9) ineffective assistance of appellate counsel. Dkt. No. 126, pp. 28-29.[4]

---

[4] Cisneros had previously raised the following issues, which he did not pursue in his April 29th letter: (1) the filing of the § 851 enhancement violated the Constitution because the fact of his prior convictions had to be proven to the jury; (2) he was sentenced in excess of the statutory maximum sentence; (3) the filing of the § 851 enhancement constituted selective prosecution; (4) counsel refused to permit Cisneros to testify in his own defense; and (5) counsel failed to object to the introduction of certain evidence. Dkt. No. 1; Second Habeas, Dkt. No. 10.  Given Cisneros's failure to raise these five issues in the April 29th filing, Cisneros has abandoned these claims and the Court will not address them further. See Gray v. Lucas, 677 F.2d 1086, 1102 (5th Cir. 1982) ("We thus find that those claims which [the petitioner] raised in his petition for habeas corpus but never pressed or presented again to the district court were abandoned.").

On that same day, the Court ordered the Government to file a response to the issues identified by Cisneros. Dkt. No. 127.

On July 7, 2020, the Government timely filed its response to the issues identified by Cisneros. Dkt. No. 139.  The Government asserted that Cisneros's claims "are untimely, procedurally defaulted, or substantively meritless," and should be denied. Id.

On August 6, 2020, Cisneros filed his reply brief. Dkt. No. 146.

## II. Applicable Law

### A. Section 2255

Cisneros seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  As relevant here, that section provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he or she was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

### B. Timeliness

As relevant here, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as it applies to 28 U.S.C. § 2255, imposes a one-year period of limitation from the date on which judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). This operates as a

statute of limitations, rather than a jurisdictional bar, and is subject to equitable tolling. Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).

The doctrine of equitable tolling is reserved for "rare and exceptional circumstances." Id. A petitioner bears the burden of establishing that equitable tolling is appropriate. U.S. v. Petty, 530 F.3d 361, 365 (5th Cir. 2008). The principle application of equitable tolling is where the petitioner has been actively misled about the cause of action or is "prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). Equitable tolling is applicable only where a petitioner has otherwise diligently pursued his claim. Id. at 403.

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings; this rule applies in habeas proceedings. U.S. v. Saenz, 282 F.3d 354, 356 (5th Cir. 2002). As relevant here, an amended pleading "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transactions, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

The Supreme Court has held that an amendment to a habeas petition does not automatically relate back because it arose out of the same trial, conviction or sentence as the original petition. Mayle v. Felix, 545 U.S. 644, 660-62 (2005). Rather, the amended claim must be "tied to a common core of operative facts" in order for it to relate back to the original petition. Id., at 664. If the amended claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," then the amendment does not relate back and is time barred. Id., at 650. For example, "new claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision." U.S. v. Gonzalez, 592 F.3d 675, 680 (5th Cir. 2009).

The Fifth Circuit and the Supreme Court have never definitively addressed whether the timeliness of a petitioner's habeas petition is done in toto or on a claim-by-claim basis. See In re Young, 789 F.3d 518, 528 n. 3 (5th Cir. 2015) (noting that the Fifth Circuit has

not decided whether the <u>habeas</u> statute of limitations "applies piecemeal to each claim or to the whole <u>habeas</u> application").

However, the First, Third, Sixth, Ninth, Tenth and Eleventh Circuits have all held that the timeliness of a <u>habeas</u> petition is determined on a claim-by-claim basis. <u>Capozzi v. U.S.</u>, 768 F.3d 32, 33 (1st Cir. 2014); <u>Fielder v. Varner</u>, 379 F.3d 113, 118 (3d Cir. 2004); <u>Bachman v. Bagley</u>, 487 F.3d 979 (6th Cir.2007); <u>Mardesich v. Cate</u>, 668 F.3d 1164, 1171 (9th Cir. 2012); <u>Prendergast v. Clements</u>, 699 F.3d 1182 (10th Cir. 2012); <u>Zack v. Tucker</u>, 704 F.3d 917, 919-26 (11th Cir. 2013), overruling <u>Walker v. Crosby</u>, 341 F.3d 1240 (11th Cir. 2003)).  No circuit court has held otherwise. <u>See</u> <u>Zack</u>, 704 F.3d at 924 (noting that the Eleventh Circuit had once held in <u>Walker</u> that a single timely claim could render an entire petition timely, but that no other circuit had joined in that interpretation); <u>Capozzi</u>, 768 F.3d at 33 (noting that it was joining "all of the other circuits that have decided the question" in holding that § 2255(f) applies on a claim by claim basis).  The Fifth Circuit has noted, albeit in dicta, that "it appears that applying the statute of limitations to each claim is consistent with AEDPA and the precedent of other circuits." <u>Young</u>, 789 F.3d at 528, n. 3.

### C. Procedural Default

Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, "without showing both cause for his procedural default, and actual prejudice resulting from the error." <u>U.S. v. Shaid</u>, 937 F.2d 228, 232 (5th Cir. 1991) (<u>en banc</u>) (internal quotation marks omitted).  "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." <u>Id</u>.  Failure to raise issues on direct appeal causes them to be procedurally defaulted for purposes of collateral attack. <u>U.S. v. Lopez</u>, 248 F.3d 427, 433 (5th Cir. 2001).

Cause is established by showing that "some objective factor external to the defense" prevented him from raising the issue on direct appeal. <u>U.S. v. Reedy</u>, 393 F. App'x 246, 247 (5th Cir. 2010) (unpubl.) (citing <u>U.S. v. Guerra</u>, 94 F.3d 989, 993 (5th Cir. 1996)).  Furthermore, actual prejudice requires that the defendant "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked

to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>U.S. v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis original). The cause and prejudice standard "presents a significantly higher hurdle than the plain error standard of review that is applied on direct appeal." <u>U.S. v. Young</u>, 77 F. App'x 708, 709 (5th Cir. 2003).[5]

### D. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>U.S. v. Grammas</u>, 376 F.3d 433, 436 (5th Cir. 2004).  To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. <u>Grammas</u>, 376 F.3d at 436.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." <u>U.S. v. Juarez</u>, 672 F.3d 381, 385 (5th Cir. 2012).  Courts will not "audit decisions that are within the bounds of professional prudence." <u>U.S. v. Molina-Uribe</u>, 429 F.3d 514, 518 (5th Cir. 2005).

A defendant's Sixth Amendment right to the effective assistance of counsel, is "a right that extends to the plea-bargaining process." <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012).  A defendant has the constitutional right to effective assistance of counsel in choosing whether to accept or reject a plea agreement. <u>Id</u>.

"When a defendant contends that counsel's deficient performance caused him to reject a plea offer, the prejudice inquiry requires the defendant to show: (1) that but for counsel's ineffective advice, there is a reasonable probability that the defendant would have accepted the plea; (2) that the court would have accepted its terms; and (3) that under the

---

[5] The only exception to the cause and prejudice standard is when "a constitutional violation has probably resulted in the conviction of one who is actually innocent" of the crime. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). This standard requires evidence that the defendant did not commit the crime for which he was convicted. <u>Id</u>. Cisneros has not asserted a claim of actual innocence – and no evidence supporting such a claim is presented – for which reason the exception does not apply.

plea, the sentence would have been less severe than the one imposed." U.S. v. Scribner, 790 F. App'x 626, 629 (5th Cir. 2019) (citing Lafler, 566 U.S. at 164).

"Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. U.S., — U.S. —, 137 S. Ct. 1958, 1967 (2017).

In any event, prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  If a petitioner fails to prove one prong, it is not necessary to analyze the other one. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

### E. Perjured Testimony

It is a violation of a defendant's Fourteenth Amendment due process rights for the Government to knowingly use perjured testimony at trial. Giglio v. U.S., 405 U.S. 150, 153-54 (1972).  In order for a defendant to be entitled to relief on this claim, he must show "(1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001).

## III. Analysis

While Cisneros had an attorney at earlier points in these proceedings, he is now proceeding pro se.  Allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972).  That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

Cisneros has raised eleven issues for this Court's review, which the Court restates as follows: (1) his lawyer was ineffective for failing to advise him that he faced a likely life sentence if he went to trial and lost because of the § 851 enhancement; (2) trial counsel was ineffective for failing to challenge the imposition of the § 851 enhancement; (3) trial counsel was ineffective for failing to collaterally attack the prior state conviction that

formed basis of § 851 enhancement; (4) Belmontes lied about the full extent of his agreement with the Government; (5) the trial judge impermissibly "bolstered" the testimony of Government witnesses; (6) trial counsel was ineffective for failing to object to the bolstering; (7) trial counsel was ineffective for failing to object to jury instructions; (8) trial counsel was ineffective for failing to investigate and interview witnesses; (9) the jury was not properly instructed on the Government's burden of proof; (10) Cisneros was denied due process of law when the trial court submitted more information to the jury during deliberations than was originally requested; and, (11) ineffective assistance of appellate counsel. Dkt. No. 126, pp. 28-29.

The Government has attacked the timeliness of some, but not all, of these claims. Dkt. Nos. 106, 139.  As previously noted, the Fifth Circuit and the Supreme Court have never definitively addressed whether the timeliness of a § 2255 petition is judged in toto or on a claim-by-claim basis. Young, 789 F.3d at 528 n. 3.  Every circuit court to consider this issue has concluded that the timeliness of a habeas petition is determined on a claim by claim basis. See Zack, 704 F.3d at 921–24 (collecting cases).  The Fifth Circuit did note that "it appears that applying the statute of limitations to each claim is consistent with AEDPA." Young, 789 F.3d at 528 n. 3.  To hold otherwise would allow a petitioner to present numerous untimely claims for review and preserve them by adding a single timely claim to the petition.  "There is no doubt" that Congress enacted the AEDPA to promote finality in criminal judgments. Williams v. Taylor, 529 U.S. 420, 436 (2000).  Permitting a petitioner to bootstrap a single timely claim to numerous untimely claims would forever frustrate finality.  Consistent with the Fifth Circuit's dicta in Young, the holdings of every circuit court to consider this issue and the purpose of the AEDPA, this Court believes the timeliness of Cisneros's petition should be analyzed on a claim-by-claim basis.

As discussed further below, the Court finds that the following claims are timely filed: (1) his lawyer was ineffective for failing to advise him that he faced a likely life sentence if he went to trial and lost because of the § 851 enhancement; (2) the trial judge impermissibly "bolstered" the testimony of Government witnesses; (3) trial counsel was ineffective for failing to object to the bolstering; (4) the jury was not properly instructed

on the Government's burden of proof; (5) trial counsel was ineffective for failing to object to the final jury instructions; (6) trial counsel was ineffective for failing to investigate and interview witnesses; (7) Cisneros was denied due process of law when the trial court submitted more information to the jury during deliberations than was originally requested; and, (8) ineffective assistance of appellate counsel.  The Court will first address why these claims are timely filed, despite not being substantively addressed until over 20 years after sentencing, and then discuss why each claim is substantively meritless.

The Court will then address the following claims: (9) trial counsel was ineffective for failing to challenge the imposition of the § 851 enhancement; (10) trial counsel was ineffective for failing to collaterally attack the prior state conviction that formed basis of § 851 enhancement; and (11) Belmontes lied about the full extent of his agreement with the Government.  These claims are untimely filed and substantively meritless.

### A. Timely Filed Claims

#### 1. Timeliness

Each of these eight claims were first raised in a § 2255 petition filed on April 27, 1998. Second Habeas, Dkt. No. 10.  These claims are timely filed.

On September 26, 1996, Cisneros filed a Rule 60(b) motion, claiming that there was no federal jurisdiction over his offense because none of the actions took place on federal land. Cisneros v. U.S., Civil No. 1:96-168, Dkt. No. 1.  That motion was re-characterized as a § 2255 petition and denied. Id., Dkt. Nos. 2, 6, 10.  The petition that was filed on April 27, 1998, and was later denied for being an unauthorized successive petition. Second Habeas, Dkt. No. 21.

If the Court recharacterizes a motion as a § 2255 petition without first warning the petitioner and giving them a chance to amend or withdraw the petition, then it cannot count as an initial § 2255 motion and cannot be used to bar a second or successive § 2255 motion. Castro, 540 U.S. As the Fifth Circuit has already recognized, the 60(b) motion cannot be considered a valid initial § 2255 petition. In re: Cisneros, No. 17-40758.  Because the second or successive bar no longer applies to Cisneros's petition that was filed in April 1998, the Court must consider whether those claims are timely filed.

Under the statute of limitations found at 28 U.S.C. § 2255(f), it seems clear that the petition was timely filed.

On April 24, 1996, the AEDPA was signed into law and created a one-year statute of limitations for filing § 2255 petitions. U.S. v. Flores, 135 F.3d 1000, 1001 (5th Cir. 1998). As relevant here, the one-year clock begins on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

On May 13, 1997, the Fifth Circuit affirmed Cisneros's convictions on direct appeal. U.S. v. Cisneros, 112 F.3d 1272 (5th Cir. 1997). Cisneros had 90 days from the Fifth Circuit's decision – until August 11, 1997 – to file a petition for a writ of certiorari with the Supreme Court. S.Ct. Rule 13. Cisneros's conviction became final when the deadline expired, i.e., August 11, 1997. U.S. v. Olvera, 775 F.3d 726, 729 (5th Cir. 2015) ("A judgment of conviction becomes final under § 2255(f)(1) when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.") (internal quotations omitted). Thus, Cisneros had until August 11, 1998, to timely file the petition under § 2255(f)(1).

The petition was filed before the August deadline expired, thus all of the claims raised in the petition are timely filed. The Government has conceded that this petition is timely filed. See Dkt. No. 106, pp. 11-12 (noting that because the claims made in April 20, 1998 petition "were filed within the one year of his conviction becoming final, they are timely"). Thus, the Court will turn to the substantive merits of each claim.

### 2. Sentence Enhancement & Plea Bargain

Cisneros alleges that he was not properly informed that he was facing a possible mandatory life sentence if he took the case to trial and that, if he had known this, he would have chosen to accept a plea agreement with the Government. This claim is not supported by the record.

In judging claims of ineffective assistance revolving around a guilty plea, the Court applies the traditional two-part Strickland test of deficient performance and prejudice. Hill v. Lockhart, 474 U.S. 52, 58 (1985). Accordingly, the considerations are whether: (1)

Garza's advice constituted deficient performance; and (2) if the performance was deficient, did it prejudice Cisneros.

### a. Deficient Performance

In order to determine whether Garza's advice constituted deficient performance, the Court must determine the exact nature of the advice given.  Cisneros has the evidentiary burden to demonstrate that the advice was deficient. Chanthakoummane v. Stephens, 816 F.3d 62, 69 (5th Cir. 2016).

In his 1998 petition, Cisneros alleges that Garza told him that the Government was "willing to discuss a plea deal." Second Habeas Dkt. No. 11, p. 12.  Under the proposed terms of the deal, the Government would not seek the § 851 enhancement and Cisneros would be required to fully cooperate with the Government. Id., pp. 12-13.  Cisneros alleged that Garza advised him not to take the deal because his deferred adjudication case would not count as a prior conviction for § 851 purposes. Id., pp. 26-27.  Indeed, in the 1998 petition, Cisneros states that he did not enter into the plea agreement, because Garza's advice led him to believe that "he would not be exposed to the mandatory life imprisonment sentence based upon such prior conviction." Id., p. 27.

At that time, the question of whether a deferred adjudication counted as a prior conviction for § 851 was an open legal question in the Fifth Circuit.  In fact, it was on direct appeal in this case that the Fifth Circuit decided that issue as a matter of first impression. See U.S. v. Cisneros, 112 F.3d 1272, 1280 (5th Cir. 1997) ("This issue is one of first impression in this circuit.").  Nevertheless, the circuits that had decided the issue had all held that a deferred adjudication was a prior conviction for § 851. U.S. v. Meraz, 988 F.2d 182, 184-85 (3d Cir. 1993); U.S. v. Campbell, 980 F.2d 245, 249-51 (4th Cir. 1992); U.S. v. McAllister, 29 F.3d 1180, 1185 (7th Cir. 1994), U.S. v. Mejias, 47 F.3d 401, 404 (11th Cir. 1995).

In his testimony at the July 2019 evidentiary hearing, Cisneros testified that Garza "never" informed him that the "filing of an 851 motion could implicate a mandatory life sentence." Dkt. No. 86, pp. 114-15.  Rather, Cisneros claimed that Garza explained that a § 851 motion "was [a] tool used by the Government to increase a sentence." Id

It seems improbable that Garza would mention the § 851 enhancement to Cisneros, but simply wave it off as just a "tool used by the Government to increase a sentence." Dkt. No. 86, pp. 114-15.   Moreover, while Garza did not have a specific memory of the conversation, he testified that he "definitely" would have explained the ramifications of the § 851 enhancement, given that a mandatory life sentence is a "very significant" consideration in the case. Id., pp. 77-78.   Insofar as Cisneros claims that Garza never explained to him that the filing of the enhancement subjected him to a possible mandatory life sentence, it is simply not credible.

At the 2019 evidentiary hearing, Cisneros testified that he never viewed the physical § 851 enhancement section or any related document prior to going to trial. Dkt. No. 86, p. 115.   He also claimed that prior to trial, he did not know what a § 851 enhancement was. Id., p. 114.   However, in his motion to the Fifth Circuit, seeking authorization to file a successive § 2255 petition, Cisneros told a different story.   In that filing, Cisneros claimed that when Garza showed him the § 851 motion prior to trial, Cisneros immediately informed Garza that the deferred adjudication case was "constitutionally invalid" because his plea in that case was "involuntary." In re: Cisneros, Case No. 17-40758, Doc. 00514078977, p. 18 (5th Cir. 2017).   Cisneros claimed, in that filing, that Garza told him "not to be concerned," because he did not believe that a deferred adjudication could be considered a prior conviction for § 851. Id., p. 19.   These versions cannot be reconciled.

Furthermore, Cisneros has claimed that he was offered a plea bargain where he would receive a sentence of 20 years in exchange for his truthful cooperation, but that Garza told him he would receive the same sentence whether he pled guilty or went to trial. Dkt. No. 86, p. 114.   The Court first notes that to the extent Cisneros claims he would have been given a guaranteed sentence of 20 years, the Court does not find this credible.

Fixed sentences, as part of a plea agreement under FED. R. CRIM. P. 11(c)(1)(C), are "rare" in the federal criminal justice system. Austin v. U.S., 2007 WL 582027, *5 (D.S.D. 2007).   With those type of plea agreements, the Government and the defendant agree to a particular sentence, which is then binding on the sentencing judge. See FED. R. CRIM. P. 11(c)(1)(C) (the sentencing recommendation found in such a plea agreement "binds the

court once the court accepts the plea agreement"). If Cisneros had pled guilty, his sentence almost certainly would have been left to the discretion of the District Judge, within the confines of the Sentencing Guidelines. Dkt. No. 86, p. 27.

On the other hand, if Cisneros pled guilty and fully cooperated with the Government to the level that it merited a Governmental motion for a downward departure pursuant to U.S.S.G. § 5K1.1, it is possible that his sentence could have been as low as 20 years. Id., pp. 26-27.  At the same time, that sentence was not guaranteed.  Further, Garza testified that it "just d[idn't] make sense" that he would have told Cisneros that he was looking at a 20-year sentence, regardless of whether he pled guilty or went to trial. Id., pp. 81-82.

Garza did admit, however, that he did not believe that the deferred adjudication counted as a prior conviction for § 851. Dkt. No. 86, p. 94.  Moreover, he would have informed Cisneros of that belief. Id.

After reviewing the record and listening to the witness testimony, the Court concludes that Garza advised Cisneros he faced a possible mandatory life sentence as a result of the § 851 filing, but that, in his legal opinion, the § 851 enhancement would not be applied because the deferred adjudication did not count as a prior conviction.  From that conclusion, the Court must determine whether that advice constituted deficient performance.

As previously noted, the Fifth Circuit had not decided this precise legal issue at the time of trial. Cisneros, 112 F.3d at 1280 ("This issue is one of first impression in this circuit.").  Cisneros has argued otherwise, stating that Garza's error was "failing to research existing case law showing that deferred adjudication offenses and expunction under state law did not alter the historical fact of the conviction and were counted as a final conviction in the context of a [§ 851] enhancement." Dkt. No. 140.  Cisneros cites several cases in support of his claim that Garza should have known that a deferred adjudication was a prior conviction for § 851. Id., citing Dickerson v. New Banner Institute, 460 U.S. 103 (1983); U.S. v. Meraz, 998 F.2d 182, 184–85 (3d Cir.1993); U.S. v. Campbell, 980 F.2d 245, 249–51 (4th Cir.1992); U.S. v. Morales, 854 F.2d 65, 68 (5th Cir. 1988); U.S. v. McAllister, 29

F.3d 1180, 1184–85 (7th Cir.1994); U.S. v. Gomez, 24 F.3d 924 (7th Cir. 1994). Cisneros's argument does not hold up to examination.

The cases cited by Cisneros are largely the cases that the Fifth Circuit relied upon in determining that deferred adjudications were convictions for § 851. Cisneros, 112 F.3d at 1280-83.  In Dickerson, the Supreme Court held that "for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being convicted." Dickerson, 460 U.S. at 114 (internal quotation marks omitted).  In Morales, the Fifth Circuit held that a probated sentence that was still subject to direct criminal review was not final for § 851 purposes and could not qualify as a predicate conviction under that statute. Morales, 854 F.2d at 69.  The remaining cases were from other circuit courts, which were not binding upon either the district court or the Fifth Circuit. Salazar v. Dretke, 419 F.3d 384, 404 (5th Cir. 2005).

Cisneros is essentially arguing that because the caselaw that the Fifth Circuit used to arrive at its decision was available at the time of trial, counsel was ineffective for failing to recognize the great weight of this precedent and act accordingly.  For the Court to hold that Garza was ineffective for failing to recognize the great weight of this non-binding precedent "would constitute Monday-morning quarterbacking on a Thursday." U.S. v. Molina-Uribe, 429 F.3d 514, 520 (5th Cir. 2005).

The Fifth Circuit, repeatedly, has made it clear that counsel is not ineffective for failing to anticipate developments in the law or how the appellate courts will settle undecided legal issues. U.S. v. Webster, 392 F.3d 787, 796-97 (5th Cir. 2004) (counsel "cannot be deemed unconstitutionally ineffective for failing to anticipate" how the courts would resolve an unsettled legal issue); Morse v. State of Texas, 691 F.2d 770, 773 n. 2 (5th Cir. 1982) ("There is no general duty on the part of defense counsel to anticipate changes in the law."); Green v. Johnson, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (same).

Furthermore, the Court must be highly deferential to counsel's decisions and "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." U.S. v. Harris, 408 F.3d 186, 189 (5th Cir. 2005).  It would seem

to be grossly unfair to conclude that counsel was constitutionally ineffective for incorrectly predicting how the Fifth Circuit would rule on an unsettled question of law.

Accordingly, Garza cannot be found to be ineffective for giving Cisneros a reasoned legal opinion of how the Court would resolve an unsettled legal issue. Garza's advice does not constitute deficient performance.   Even if such advice did constitute deficient performance, Cisneros was not prejudiced by it.

### b. Prejudice

It is not enough for Cisneros to show that counsel gave him erroneous advice; he must also show that he was prejudiced.   Prejudice is demonstrated through evidence showing: (1) if properly advised, the defendant would have entered a guilty plea; (2) the Court would have accepted the plea; and (3) that the defendant's sentence would have been less severe than the one he actually received. Scribner, 790 F. App'x at 629 (citing Lafler, 566 U.S. at 164).  As with the deficient performance prong, Cisneros has the burden to show that he was prejudiced by counsel's performance. Thomas v. Vannoy, 898 F.3d 561, 572 (5th Cir. 2018).

In this case, the entire inquiry turns on whether Cisneros would have chosen to plead guilty.  There is no basis to conclude that the Court would not have accepted a plea and any plea which did not involve a mandatory life sentence would have resulted in a less severe sentence than the one that Cisneros actually received.  Thus, the Court will focus solely on whether Cisneros would have chosen to plead guilty.

Cisneros testified that, had he been properly advised, he would have taken the plea, because he would have "never" risked a mandatory life sentence. Dkt. No. 86, p. 118.  The Court views this testimony with skepticism.  At this stage of the case – having been in prison for 25 years with no hope of ever being released – Cisneros has every reason to testify that he would have accepted the deal. See Lee, 137 S.Ct. at 1967 (Courts should not overturn a conviction "solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

In 1995, however, Cisneros showed no interest in pleading guilty.  AUSA Lewis did not remember Garza ever indicating that Cisneros was interested in cooperating and debriefing. Dkt. No. 86, pp. 28-29.  When asked if Garza ever approached him about a plea deal for Cisneros, Lewis testified, "Not only do I not have any recollection of that, I do not think he ever did, meaning Mr. Garza never advised me that Mr. Cisneros, Juan Gabriel Cisneros, wanted to cooperate, debrief, was willing to testify." Id.

As Lewis noted, debriefing would have involved giving evidence against his brother, mother, father, and possibly more family members. Id., pp. 28-30.  Garza never recalled Cisneros showing any interest in cooperating, but rather remembered Cisneros as "a fighter" who would "fight to defend himself." Dkt. No. 86, p. 80.  Garza added that Cisneros's family, including his brother and mother, also impressed him as fighters. Id. Garza testified that he did not believe that "Cisneros ever indicated to me that he wanted to plead guilty." Dkt. No. 86, p. 96.  Garza noted that Government's case was built on "a lot of snitches [. . .] forgive me for using that word – but, yeah, cooperating co-Defendants." Dkt. No. 86, p. 97.  Garza described Cisneros's attitude as being one in which "he resented that those people [the cooperators] were testifying against him and he was going to fight the case." Id., p. 102.  Garza further stated that "there was never any discussion about [Cisneros] wanting to settle the case." Id., p. 103.

This was not a case where the defendant was on the fence about pleading guilty and his attorney's erroneous advice pushed him into taking the case to trial.  The contemporaneous evidence shows a defendant who was determined to go to trial; with no interest in testifying against his family; and, who was angry at the cooperating witnesses for betraying him.  Cisneros had no interest in accepting responsibility for his actions; after he was found guilty – but prior to sentencing – he attempted to escape from custody.  Those are not the actions of a man who is considering cooperating with the Government.

When a defendant is "resolute in taking his case to trial," he is not prejudiced by counsel's erroneous advice about the benefits or drawbacks of a plea agreement. Scribner, 790 Fed. App'x. at 629-30. There is no contemporaneous evidence which demonstrates

that Cisneros had any interest in pleading guilty.  His claim of ineffective assistance of counsel should be denied.

### 3. Judicial Bolstering

Cisneros alleges that the trial judge interrupted the testimony of Arnoldo Belmontes with his own questions, impermissibly bolstering Belmontes's credibility before the jury. The Government has argued this claim is not supported by the record and the caselaw.

"Federal judges have wide discretion with respect to the tone and tempo of proceedings before them; they are not mere moderators or hosts at a symposium." Waterman v. McKinney Indep. Sch. Dist., 642 F. App'x 363, 372–73 (5th Cir. 2016) (quoting U.S. v. Adkins, 741 F.2d 744, 747 (5th Cir. 1984)).  A judge may examine a witness regardless of which party called the witness. FED. R. EVID. 614(b).  Judges may "comment on the evidence," and "may question witnesses and elicit facts not yet adduced or clarify those previously presented" as well as "maintain[ing] the pace of the trial by interrupting or cutting off counsel as a matter of discretion." Moore v. U.S., 598 F.2d 439, 442 (5th Cir. 1979) (internal citations omitted).  A judge oversteps his role when his behavior becomes so prejudicial that it denies the defendant a fair trial, as opposed to a perfect one. U.S. v. Williams, 809 F.2d 1072, 1086 (5th Cir.), on reh'g, 828 F.2d 1 (5th Cir. 1987) (citing U.S. v. Pisani, 773 F.2d 397, 402 (2nd Cir. 1985)).

"To rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." U.S. v. Bermea, 30 F.3d 1539, 1569 (5th Cir. 1994).  The judge's intervention in the proceedings must be quantitatively and qualitatively substantial to meet this test. Id.

Cisneros asserts that the judge's questioning of Belmontes "displayed a partial attitude" and was "bolstering of [Belmontes's] credibility." Dkt. No. 2, p. 26.  In order to assess this claim, the Court must assess the quantative and qualitive nature of the questioning. See U.S. v. Williams, 809 F.2d 1072, 1087 (5th Cir.), on reh'g, 828 F.2d 1 (5th Cir. 1987) ("A statistical count of court interruptions is pertinent to the inquiry").

### a. Nature of Questioning

As a quantative measure, the Court has counted Belmontes's testimony as taking up a total of 5,552 lines of transcript. Exhibit A.[6]  The questioning by Judge Vela — and resulting answers from Belmontes — took up 653 lines of transcript, meaning that Judge Vela's questioning took up about 11.8 percent of the transcript.  Of the 3,103 lines of testimony on direct examination, Judge Vela's questioning took up 477 lines, or 15.4 percent.  Of the 2,449 lines of testimony on cross-examination, Judge Vela's questioning took up 176 lines, or 7.2 percent.

On a qualitative basis, Judge Vela's questioning took different forms.  Some of the questioning was simple clarification of testimony that apparently was garbled or hard to hear. See CR Dkt. No. 533, p. 90 (seeking clarification of what city Belmontes had identified as his birthplace).  In other instances, Judge Vela's questioning bore directly on Belmontes's involvement with the Cisneros brothers. See CR Dkt. No. 533-1, pp. 67-68 (Judge Vela questioning Belmontes about the Halliburton trucks used by the Cisneros brothers to transport marihuana).

While Belmontes was unquestionably an important witness, his testimony was not always easy to follow.  The chronology of his testimony was very important; he began by working for his father's drug-running operation, then worked with Ivo Perez (a co-defendant in this case) before working with the Cisneros brothers.  Some of his drug-running activities only implicated Perez or only implicated the Cisneros brothers and it was not always easy for the jury to understand who the players were in each drug-running incident that Belmontes testified to.

In fact, at one point, Judge Vela's questioning seemed to exculpate Cisneros.  Belmontes testified about a pool vehicle that he and Beto Cipple used to move marihuana; the vehicle was caught and impounded by the police in Hebbronville. CR Dkt. No. 533-1,

---

[6] The Court has attached a spreadsheet as an exhibit to this report and recommendation, which outlined its count of Belmontes's testimony and the judicial questioning.  In arriving at this determination, the Court excluded the portions of the transcript where no testimony was taking place, such as bench conferences and stipulations being read into the record.

p. 77.  Judge Vela questioned Belmontes about this vehicle to confirm: (1) that this vehicle predated Cisneros's involvement in the drug-running operation; and (2) that any involvement between Belmontes and Ivo Perez pre-dated Cisneros's involvement. CR Dkt. No. 533-1, pp. 78-81.  At the next break, Judge Vela instructed the jury that Belmontes had just "testified to matters that took place outside of those allegations [in the indictment]" and that "unless I tell you otherwise, you're instructed not to consider it for any purpose whatsoever." Id., pp. 86-87.

There were a few instances where Judge Vela's questioning went to matters regarding Belmontes's credibility.  In the first instance, Judge Vela questioned whether Belmontes had testified inconsistently about the nature of his drug-running operation.

> [AUSA]: How much marihuana did [a certain driver] have [when he was caught]?
> [Belmontes]: A thousand pounds.
> [The Court]: A thousand pounds? I thought you said most of the loads were 165 or 175 pounds. Did they vary?
> [Belmontes]: Yes, later on.
> [The Court]: What's the smallest load – smallest load that would be – part of the – that you would send out?  Belmontes [organization] would send out?
> [Belmontes]: 50 pounds.
> [The Court]: 50 pounds. What's the largest?
> [Belmontes]: 2,000.
> [The Court]: 2,000 pounds. And on this occasion, it involved a thousand pounds?
> [Belmontes]: Yes, sir.

CR Dkt. No. 533, pp. 98-99.

Later on, the Government asked Belmontes a series of questions about the phones and beepers that were used to stay in contact with Perez and the Cisneros brothers as they coordinated their drug-running operations. CR Dkt. No. 533-1, pp. 87-89.  Belmontes recited the phone numbers associated with these devices in his testimony.

> [AUSA]: Okay, Mr. Belmontes, have you ever been – plead guilty to any felonies?
> [Belmontes]: Yes, sir.
> [AUSA]: Okay.

> [The Court]: Before you get into that, let me ask you something.  I noticed that you remembered every telephone number that you were asked about from your memory.
>
> [Belmontes]: Yes, sir.
>
> [The Court]: You didn't have any notes?
>
> [Belmontes]: No, sir.
>
> [The Court]: Did you go over those before you testified today?
>
> [Belmontes]: No, sir.
>
> [The Court]: You just simply remembered them?
>
> [Belmontes]: Yes, sir.

CR Dkt. No. 533-1, pp. 89-90.

A few minutes later, the Government questioned Belmontes about his guilty plea and sentence for the drug activities associated with this case.  The Government elicited from Belmontes that under the terms his plea agreement, the Government agreed to recommend a sentence of no more than nine years. CR Dkt. No. 533-1, p. 92.

> [AUSA]: Have you been sentenced yet?
>
> [Belmontes]: No.
>
> [The Court]: Who does your sentence depend upon?  Who decides what sentence you are going to receive?
>
> [Belmontes]: The judge.
>
> [The Court]: The who?
>
> [Belmontes]: The judge.
>
> [The Court]: As a matter of fact, you pled guilty before me, did you not?
>
> [Belmontes]: Yes, sir.
>
> [The Court]: Did you understand that it is totally and completely up to the judge?
>
> [Belmontes]: Yes sir.

CR Dkt. No. 533-1, pp. 92-93.

On cross-examination, defense counsel for Perez returned to the issue of Belmontes's sentencing exposure.

> [Defense Counsel]: Did the Government also tell you that under the United States Sentencing Guidelines that a person convicted of dealing in over a thousand kilos of marihuana, that if they have a have a prior felony [conviction], that the minimum sentence that they can receive is 20 years? 20 years to life, that would be your sentence if you didn't work out some kind of a deal with the Government to get a lesser sentence.  Did they tell you that?

[Belmontes]: No, I don't remember.

[The Court]: Well, I told you that, didn't I?  Didn't I tell you that you could get not less than 20 years and all the way up to life in prison?

[Belmontes]: (Spanish spoken)

[Interpreter]: But that was the other one.

[The Court]: I understand that. But did I tell you that?

[Belmontes]: I don't remember, sir.

[The Court]: You don't remember.

CR Dkt. No. 533-2, pp. 33-34.

A few minutes later, Perez's defense counsel questioned Belmontes about his forfeiture agreement with the Government.

[Defense counsel]: That's all they are going to take away from you, your ranch — your home?

[The Court]: Is that the only thing you owned?

[Belmontes]: Yes.

[The Court]: What about these other [business] interests that he made reference to? Are any of those in your name?

[Belmontes]: No, sir.

[The Court]: Then in whose names are they?

[Belmontes]: They are my dad's (Spanish spoken) [Interpreter]: What I have — what I have is only the house.  And a video [store] that I have.  That I am leasing right now.

[The Court]: It is not yours, then?

[Belmontes]: No, sir.

[The Court]: You just pay rent for it?

[Belmontes]: (Spanish spoken) [Interpreter]: Only things inside.

CR Dkt. No. 533-2, p. 37.

When Cisneros's defense counsel cross-examined Belmontes, he also questioned Belmontes about his cooperation with the Government.

[Defense counsel]: You did this, you gave them the name of Javier Cisneros to curry favor with the Government, isn't that true?

[Belmontes]: I gave them the name of my father, also, and my brother.

[Defense counsel]: But you gave them — the question is, did you give them the name of Javier Cisneros to curry favor with the Government?

[Belmontes]: Yes, sir.

[The Court]: You also gave them information against your father and your brother?

[Belmontes]: My brother and my father.

32

CR Dkt. No. 533-2, pp. 78-79.

In both his opening instructions and final instructions, Judge Vela instructed the jury not to read anything special into any questions that he asked.

During opening instructions, Judge Vela told the jury:

> As we proceed, I will tell you that we are in Federal Court. In Federal Court, the Judge can ask questions. As a matter of fact, I guess the Judge can even state his opinion, but it is never going to be my intention to lead you to believe that I have an opinion about the case because I don't. And if I do anything during the course of the trial that leads you to believe that I have an opinion about the case, please disregard it. That's your thing. I do not want to invade what is yours.

CR Dkt. No. 533, p. 33.

Judge Vela returned to that same issue in his final jury instructions:

> I told you when we began this trial that I did not have an opinion about the case. I still don't. If I did anything to lead you to believe that I have an opinion about the case, I am going to ask you to disregard it. If I asked a question during the course of the trial, which I did, you're not to give it any more or less [weight] than anybody else asking the question. I do not have an opinion about the case. If you feel like I did something during the course of the trial that I did, I am asking you to consider the fact that I would be invading your province and that's something I do not want to do. It is your thing. I do not want to get involved with it.

Dkt. No. 536-5, p. 45.

### b. Prior Caselaw

In order to assess whether Judge Vela's questioning rose to the level to prejudice Cisneros, the Court looks to prior cases involving the nature of judicial questioning. Judge Vela was an active questioner of witnesses at trial; there are several cases where the Fifth Circuit addressed whether Judge Vela's questioning unduly prejudiced the defendant.

The Fifth Circuit reversed a conviction involving Judge Vela for excessive judicial questioning. U.S. v. Saenz, 134 F.3d 697 (5th Cir. 1998). Saenz was a two-day drug distribution jury trial, where "the outcome hinged on the jury's evaluation of the credibility of two witnesses." Id. at 713. The two witnesses were a co-conspirator who testified for the Government and the defendant, who testified on his own behalf. Id. As to the co-conspirator, Judge Vela took up 18 percent of the total examination, including over 20

percent of the direct examination. Id., p. 704 n. 3.  As to the defendant, Judge Vela's questioning took up 23.5 percent of his direct examination. Id., n. 7.

On a qualitative level, the Fifth Circuit found that Judge Vela's questions repeatedly expressed disbelief as to the veracity of the defendant's testimony. Id., at 710-12.  It also found that Judge Vela's questioning of the key government witness "created an appearance that the court was assisting the government in proving its case." Id., at 706.  The Fifth Circuit noted that not every instance of judicial questioning merited reversal; if a trial was lengthy, involved "repetitive and convoluted testimony" or if the remaining evidence of guilt was overwhelming, reversal was not required. Id., pp. 712-13.  Ultimately, the quantitative and qualitative nature of the questioning, in "the unusual circumstances presented by this short trial in which the outcome depended largely on the credibility of two witnesses," mandated reversal. Id., at 713.  Indeed, the Court found that the curative instructions given — which were similar to the ones given in the instant case — were not sufficient to ameliorate any prejudice. Id.

In U.S. v. Cantu, 167 F.3d 198 (5th Cir. 1999), the Fifth Circuit affirmed a conviction in a drug conspiracy case where Judge Vela questioned the witnesses.  The Court distinguished Saenz "in several key respects" in affirming the conviction: (1) the Government's case did not rest on the testimony of a single witness; (2) the defendant did not testify in his own defense; (3) the questioning was not as quantitively extensive as it was in Saenz.  Cantu, 167 F.3d at 203.  As to the third factor, the Court did not specifically quantify the questioning in Cantu other than to note the level of questioning in Saenz and state that "[i]n the present case, the district court's questioning of witnesses did not approach this level of intrusiveness." Cantu, 167 F.3d at 203 n. 22.

Later that same year, the Fifth Circuit again affirmed a conviction where the defendant argued that he was prejudiced by Judge Vela's questioning. U.S. v. Peinado-Canales, 196 F.3d 1256 (5th Cir. 1999).  The Court's decision invoked both Saenz and Cantu.  It held, that like in Saenz, the defendant testified in own defense and that Judge Vela's questioning took up approximately one-third of the direct examination. Peinado-Canales, 196 F.3d at *5.  It also noted, in relation to Saenz, that "Peinado's trial lasted only

two days, the disputed issue (whether Peinado knowingly was involved in the conspiracy) was neither confusing nor complex, and the record does not reflect that counsel were unprepared or wasting time." Id.  But the Court held that, like in Cantu, the remaining evidence against the defendant was so sufficient that any error was "not so substantial or prejudicial as to require reversal." Id.  Furthermore, "the fact that the trial as a whole was conducted in an impartial manner, and the court's jury instructions that it had no opinion about the case," also ameliorated any harm. Id.

### c. Analysis

Given the facts of this case, in comparison with Saenz, Cantu and Peinado-Canales, it is clear that Cisneros does not merit relief.

By its own admission, the Fifth Circuit's decision in Saenz was dictated by "the unusual circumstances" in that case. Saenz, 134 F.3d at 712-714.  As further identified by Cantu and Peinado-Canales, there are several factors that the Court considered in Saenz that bear upon the analysis here, namely:  (1) the quantity of questions asked; (2) the fact that the judge extensively questioned the defendant, including questions that went to credibility; (3) whether the testimony given was straight-forward or needed clarification; and (4) whether the Government's case rested solely on the testimony of the witness who was questioned.  None of these factors favor Cisneros in this case.

The quantity of questions asked in this case was much fewer than those asked in Saenz or Peinado-Canales.  Judge Vela's total questioning of Belmontes took up 11 percent of the total testimony and 15 percent of the direct examination.  In Saenz, his questioning took up 18 percent of the total examination, including over 20 percent of the direct examination.  Saenz, 134 F.3d at 704 n. 3.  In Peinado-Canales, Judge Vela's questioning took up approximately one-third of the direct examination.  Peinado-Canales, 196 F.3d at *5.  From a quantative perspective, Judge Vela's questioning was far less intrusive in this case.

As to the second factor, Cisneros did not testify on his own behalf.  This is markedly different than Saenz or Peinado-Canales, where Judge Vela extensively questioned each defendant during their testimony.  In Saenz, the Court stated that it was "particularly

sensitive to a trial judge's questioning of the defendant, because when a defendant takes the stand in his own behalf, any unnecessary comments by the court are too likely to have a detrimental effect on the jury's ability to decide the case impartially." Saenz, 134 F.3d at 709 (cleaned up)[7] (quoting U.S. v. Carpenter, 776 F.2d 1291, 1294 (5th Cir. 1985)).  As noted in Cantu, Cisneros's decision not to take the stand on his behalf meant "the district court had no opportunity to question—let alone, improperly question—him." Cantu, 167 F.3d at 203.

    As to the third factor, it is was critically important for the Court to ensure that both the timeline of Belmontes's testimony, as well as the identity of the players involved, were clear.  Belmontes spent his teenage years and adult life running drugs.  His organization involved different people at different times; Cisneros was not involved in every drug transaction that Belmontes made.  In order to ensure that the jury did not wrongfully associate Cisneros with transactions that predated his involvement with Belmontes, the Court had to clarify some of Belmontes's testimony. CR Dkt. No. 533-1, pp. 78-87.  There was much more of a need for Judge Vela to question Belmontes, to ensure that the testimony, timeline, and players were clear, than there was in Saenz.  Indeed, some of the questioning served to exculpate Cisneros more than it inculpated him.  This factor works against a finding that Cisneros was prejudiced.

    Lastly, the Government's case did not rest solely on Belmontes.  There was circumstantial evidence that Belmontes and the Cisneros brothers were working together, including records showing phone calls between them. CR Dkt. No. 536, p. 5- Dkt. No. 536-2, p. 46.  Belmontes was undoubtedly an important witness, but he was one of many witnesses.  Indeed, the Government put on 44 witnesses over a four-day trial.  This factor also works against a finding that Belmontes was prejudiced.

---

[7] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); see also Flores-Abarca v. Barr, 937 F.3d 473, 479-81 (5th Cir. 2019) (using "cleaned up").

Cisneros has rested his argument on the Fifth Circuit's holding in <u>Saenz</u>. Dkt. No. 146, p. 20.  As illustrated by <u>Cantu</u> and <u>Peinado-Canales</u>, the facts of this case are too dissimilar to <u>Saenz</u> as to merit relief.  This claim should be denied.

### 4. Ineffective Assistance as to Judicial Bolstering

Cisneros asserts that his counsel was ineffective for failing to object to the judge's questioning of Belmontes.  This claim should be denied.

As previously noted, claims of ineffective assistance of counsel are judged by the two-pronged standard of (1) deficient performance and (2) prejudice. <u>U.S. v. Kelly</u>, 915 F.3d 344, 350 (5th Cir. 2019).  Cisneros cannot meet either prong.

### a.  Deficient Performance

As to the deficient performance prong, "an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, are virtually unchallengeable." <u>Bryant v. Scott</u>, 28 F.3d 1411, 1415 (5th Cir. 1994) (internal quotation marks omitted).  Defense counsel could have very easily made the strategic decision not to object to Judge Vela's questions because: (1) he did not want to inflame the jury; (2) some of the questions asked resulted in answers and jury instructions that were favorable to Cisneros; and, (3) the vast majority of the questions were anodyne questions that had no obvious risks to Cisneros's defense.  Counsel is not <u>per se</u> deficient for choosing not to object to bolstering of testimony. <u>Pape v. Thaler</u>, 645 F.3d 281, 290–91 (5th Cir. 2011).  Cisneros fails to meet this prong.

### b.  Prejudice

Even if counsel was deficient, Cisneros was not prejudiced.  Cisneros argues that if counsel had objected and the objection had been overruled, his claim regarding the bolstering would be reviewed <u>de novo</u> instead of under a plain error standard and that the more favorable standard would have led to reversal of his conviction. Dkt. No. 146, pp. 24-25.

As an initial matter, this is an incorrect statement of the law.  If the defendant objects to the judicial questioning at trial, then the claim is reviewed under an abuse of discretion

standard. <u>U.S. v. Castillo</u>, 772 F. App'x 203, 204 (5th Cir. 2019); <u>U.S. v. Bustamante</u>, 207 F.3d 659 (5th Cir. 2000); <u>U.S. v. Green</u>, 293 F.3d 886, 891 (5th Cir. 2002).

Even under an abuse of discretion standard, Cisneros would not have prevailed on appeal.  Under this standard, the Court reviews whether the judicial questioning expresses a bias or confuses the roles of judge and prosecutor.  Instead, the questioning must "be used to help the jury understand the evidence." <u>Green</u>, 293 F.3d at 891.  The defendant is not prejudiced by judicial questioning if there is other evidence of his guilt adduced at trial. <u>Castillo</u>, 772 F. App'x at 204.

While Judge Vela certainly exercised his prerogative to question Belmontes, his behavior was not "so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial." <u>Id</u>.  The questions asked did not express an opinion about the veracity of the testimony, but were used to clarify the testimony.  Even under an abuse of discretion standard, Cisneros's claim would still fail.  This claim should be denied.

Cisneros has also alleged that counsel was ineffective for failing to object to the Government's bolstering of Belmontes's testimony.[8]  This claim should also be denied.

During direct examination of Belmontes, the following exchange took place:

> [AUSA]: Has the United States told you that in exchange for your truthful cooperation, we would recommend something to the Court?
> [Belmontes]: Yes, sir.
> [AUSA]: What is it that we have said that we would recommend to the Court?
> [Belmontes]: No more than nine years.
> [AUSA]: That you would be sentenced to serve a period of time in prison of no more than nine years?
> [Belmontes]: Yes, sir.

Dkt. No. 533-1, p. 92.

Cisneros alleges that the Government impermissibly bolstered Belmontes's testimony with that questioning. Dkt. No. 126, p. 3.  This claim is frivolous.

---

[8] It is unclear to what extent this claim is intertwined with Cisneros's claim that Belmontes had an undisclosed agreement with the Government for an additional reduction in his sentence.  The Court will address this claim as a freestanding claim of ineffective assistance.

"Admission of a plea agreement wherein the witness has agreed to testify truthfully or face prosecution for perjury is not impermissible bolstering of the witness." U.S. v. Edelman, 873 F.2d 791, 795 (5th Cir. 1989). Bolstering only occurs when the prosecutor implies that either the Government or the Judge has already "determined the testimony to be truthful." U.S. v. Sosa, 897 F.3d 615, 621 (5th Cir. 2018). That did not occur in this exchange. Indeed, the Government highlighted Belmontes's obligation to testify truthfully without commenting on whether his testimony met that standard. This claim should be denied.

### 5. Jury Instructions

Cisneros alleges that the Court told the jury that if the Government did not meet its burden of proof, they "should" acquit as opposed to an instruction that they "must acquit" acquit him. Dkt. No. 2, p. 36. Cisneros argues that this alleged misstatement of the burden of proof was a structural error which cost him a fair trial. This claim should be denied.

The Court must examine the jury charge as a whole and not in isolation. U.S. v. Jones, 664 F.3d 966, 981 (5th Cir. 2011). In light of that command, the Court will examine every instance of the jury being instructed as to the burden of proof in this case. The Court notes that any failure to properly instruct the jury as to the burden of proof is not subject to a harmless error analysis; it is a structural defect which, if found, requires reversal. Sullivan v. Louisiana, 508 U.S. 275, 281–82 (1993).

In giving the final jury instructions, the Court instructed the jury on several occasions as to the Government's burden of proof.

The Court told the jury that each defendant was presumed to be innocent of the charges against them and then added: "Unless you're satisfied beyond a reasonable doubt that the defendant that you have under consideration is guilty, that presumption alone is sufficient for you to find the defendant not guilty." CR Dkt. No. 536-5, pp. 45-46.

The trial judge later went on to say, "the Government has the burden of proving their guilt beyond a reasonable doubt. If you find the Government failed to prove their guilt beyond a reasonable doubt, you should find the defendant that you have under

consideration or all the defendants you have under consideration not guilty." CR Dkt. No. 536-5, p. 46.

The trial judge reiterated that if the jury was "not satisfied that the Government has met that burden [of beyond a reasonable doubt], you should find that defendant not guilty." CR Dkt. No. 536-5, p. 47.

When instructing the jury as to the elements of possession with intent to distribute, the Court instructed the jury that they "<u>must</u> be satisfied of the following matters as having been proven to you by the Government beyond a reasonable doubt." CR Dkt. No. 536-5, p. 60 (emphasis added).  When instructing the jury as to the law of conspiracy, the Court stated that "What is important is what the Government <u>must</u> prove to you and you <u>must</u> find beyond a reasonable doubt before you can find any defendant guilty of Count No. 17, that is, the conspiracy to possess the marijuana in question." <u>Id</u>., p. 62 (emphasis added). The Court later emphasized this point again, that the Government "<u>must</u> prove to you" the elements of conspiracy before any defendant could be found guilty. <u>Id</u>. (emphasis added).

The Court later stated that if the jury was satisfied that the Government proved every element beyond a reasonable doubt, it "should" find the defendant guilty, but that if the Government did not meet this burden, the jury "should" find the defendant not guilty. CR Dkt. No. 536-5, p. 63.  The Court later instructed the jury that if they found that no conspiracy existed, "you are to acquit the defendants on that charge." <u>Id</u>., p. 65.

While the Fifth Circuit has not addressed this precise issue, the Seventh Circuit has addressed the use of "should" as opposed to "must" when instructing the jury as to the Government's burden of proof.  The Seventh Circuit noted that the use of "must" is "preferable," but noted that "it is hardly plausible that the jury supposed that while they 'should' acquit [the defendant] if he was not guilty beyond a reasonable doubt, they didn't have to acquit him if they didn't want to." <u>U.S. v. Kerley</u>, 838 F.2d 932, 940 (7th Cir. 1988).  Like in this case, the trial judge in <u>Kerley</u> used the word "should" to instruct the jury to find the defendant guilty if the Government met its burden of proof. <u>Id</u>.  The Seventh Circuit noted that within that backdrop, the word "should" was used as an "imperative"

and "not hortatory" in the instruction. <u>Id</u>.  In reading the instructions in this case, the same is true here.

The Court "has discretion as to the substance and form of jury charges as long as the jury is not misled and understands the issues." <u>Alexander v. Servisair, LLC</u>, 593 Fed. App'x. 352, 356 (5th Cir. 2014) (unpubl.) (quoting <u>Freimanis v. Sea-Land Serv., Inc.</u>, 654 F.2d 1155, 1163 (5th Cir. Unit A Sept. 1981)).  The proper standard for whether a juror would be misled is based on "what a reasonable juror could have understood the charge as meaning." <u>Jones v. Butler</u>, 864 F.2d 348, 367 (5th Cir. 1989).  The trial judge used "should" and "must" interchangeably to instruct the jury as to the applicable burdens of proof.  No reasonable juror would have understood the use of the word "should" to indicate that he or she had license to find Cisneros guilty independently of whether the Government met its burden.  This claim approaches sophistry and should be denied.

### 6. Ineffective Assistance as to Jury Instructions

Cisneros alleges that counsel was ineffective for failing to object to the jury charge. Again, this claim is meritless.

As previously noted, Cisneros must show that counsel's performance was constitutionally deficient and that he was prejudiced by counsel's performance.  Counsel's performance was not deficient.  No reasonable juror would have read the use of "should" as being permissive or functionally different than "must."  Thus, any objection would have been meritless, and counsel is not required to make futile objections. <u>Clark</u>, 19 F.3d at 966.

Furthermore, even if counsel's performance was deficient, Cisneros was not prejudiced by the failure to object.  The failure to object did not change the legal standard under which Cisneros's claim is judged.  A constitutionally deficient jury instruction as to reasonable doubt is never subject to harmless error analysis. <u>U.S. v. Stanford</u>, 823 F.3d 814, 830 (5th Cir. 2016) (citing <u>Sullivan</u>, 508 U.S. at 277).  If proven, such erroneous instructions are a structural error that would mandate reversal of the conviction. <u>U.S. v. Nepal</u>, 894 F.3d 204, 212 (5th Cir. 2018).  Thus, any failure to object did not disadvantage Cisneros on appeal.  However, as previously discussed, the instructions in this case were

not erroneous or misleading.  The jury was properly instructed as to the Government's burden of proof, for which reason this claim should be denied.

### 7. Failure to Investigate

Cisneros alleges that his attorney was ineffective for failing to fully investigate the case and interview witnesses.  This claim is conclusory and meritless.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Cox v. Stephens, 602 Fed. App'x. 141, 146 (5th Cir. 2015) (unpubl.) (quoting Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993)).

Cisneros merely claims that his attorney failed "to investigate the case and interview witnesses." Second Habeas, Dkt. No. 11, p. 4.  He does not state which witnesses should have been interviewed, or what they would have said, or how their testimony would have changed the outcome of the trial.

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition..., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971)).  In short, conclusory allegations are insufficient to raise a constitutional issue. U.S. v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993).  Accordingly, this claim is conclusory and should be denied.

### 8. Jury Transcript

Cisneros alleges that he was denied due process of law when the trial court submitted more information to the jury during deliberations than was originally requested. This claim is meritless.

After the jury retired to deliberate, it sent back several notes. CR Dkt. No. 538, pp. 1-20.  The fourth note read: "Need testimony on Luciano Hinojosa as to when he painted a pool truck for Ivo Perez." Id., pp. 15-16.  The trial judge noted that "because of the brevity of the testimony of the witness in question," the court reporter already had a full transcript of Hinojosa's testimony prepared. Id.  The judge proposed that the jury be sent the entire

transcript for its review. Id.  Cisneros's attorney objected to that proposal because the jury only asked for testimony as to one co-defendant, but the testimony being sent back would also include the portions that implicated Cisneros. Id., p. 17.  The judge overruled the objection, sending the entire testimony back to the jury.  Cisneros alleges that by sending back more evidence than the jury requested, he was unduly prejudiced.

"It is a firm rule that the district court has broad discretion in responding to the jury's request for the transcript of a particular witness's testimony and will only be reversed upon a finding of an abuse of discretion." U.S. v. Eghobor, 812 F.3d 352, 359 (5th Cir. 2015) (cleaned up) (quoting U.S. v. Schmitt, 748 F.2d 249, 256 (5th Cir. 1984)).  The Court "cannot ignore the risk of the jury placing undue emphasis on the provided testimony." Eghobor, 812 F.3d at 359.

In this case, there was no undue emphasis placed on the testimony.  Hinojosa's testimony was short, and the entire transcript was provided, "which mitigates the threat of the jury taking portions out of context." Eghobor, 812 F.3d at 359.  Furthermore, the Court did not comment on the testimony, but merely gave the jury the transcript. See U.S. v. Villegas-Zapata, 86 F. App'x 693, 695 (5th Cir. 2004) (fact that court did not comment on testimony weighed in favor of a finding that providing the transcript was not an abuse of discretion).  Cisneros argues that the Court "directed the jurors attention to facts and testimony that involved petitioner's alleged acts and not Ivo Perez's acts." Second Habeas, Dkt. No. 11, p. 38.  This argument is factually incorrect; the Court did not point to any specific facts or portions of Hinojosa's testimony.

Furthermore, by producing the entire transcript, the Court was not endorsing Hinojosa's testimony as correct or incorrect, but was letting the jury re-read the testimony and draw its own conclusions. U.S. v. Martinez-Moncivais, 14 F.3d 1030, 1038 (5th Cir. 1994).  The Court did not abuse its discretion in sending back all of the testimony.  This claim is meritless and should be denied.

### 9. Ineffective Assistance of Appellate Counsel

Cisneros alleges that he received ineffective assistance of appellate counsel. Dkt. No. 126, pp. 28-29.  This claim should be denied.

"In the appellate context, counsel is deficient if he or she unreasonably fails to discover nonfrivolous issues and to file a merits brief raising them." <u>Halprin v. Davis</u>, 911 F.3d 247, 260 (5th Cir. 2018) (cleaned up).  "A petitioner may demonstrate prejudice by showing a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." <u>Id</u>. (internal quotation marks omitted).

In his 1998 <u>habeas</u> petition, Cisneros claimed appellate counsel was ineffective for failing to raise six issues, which the Court re-orders as follows: (1) ineffective assistance of trial counsel, (2) the faulty jury instructions, (3) the introduction of the full Hinojosa transcript to the jury, (4) the judicial bolstering claim (5) the trial court's denial of the defense motion for additional time for closing argument; and (6) the introduction of Cisneros's prior drug convictions into evidence. <u>Second Habeas</u>, p. 6.  The Court will address each of these in turn.

The claim that appellate counsel should have pursued a claim of ineffective assistance of trial counsel on direct appeal is frivolous.  Except in rare circumstances, not present in this case, the Fifth Circuit will not consider claims of ineffective assistance of counsel on direct appeal. <u>U.S. v. Miller</u>, 406 F.3d 323, 336 (5th Cir. 2005).

The claims regarding the jury instructions, the Hinojosa transcript and judicial bolstering all fail.  As previously noted, Cisneros is not entitled to relief as to any of those claims.  There is no reasonable probability that he would have prevailed on appeal on any of those claims, thus he was not prejudiced by counsel's failure to pursue them on appeal. <u>Halprin</u>, 911 F.3d at 260.

The claim regarding the denial of additional time for closing argument likewise would not have prevailed on appeal.  "The length of time allocated to counsel for closing argument rests with the discretion of the trial court." <u>U.S. v. Sotelo</u>, 97 F.3d 782, 793 (5th Cir. 1996).  In this case, the Court gave the Government 90 minutes for closing argument and each of the three defendants received 30 minutes, giving them 90 minutes total. CR Dkt. No. 536-5, pp. 72-73.  In other words, each side received 90 minutes to make their argument.  Cisneros has not shown that his attorney was unable to adequately summarize the evidence and arguments in his client's favor or that there were additional issues that he

was unable to raise due to time constraints. <u>Sotelo</u>, 97 F.3d at 793-94.  Thus, this claim would not have been successful on appeal and Cisneros was not prejudiced by appellate counsel's failure to raise it.

As to the final issue – submitting evidence of Cisneros's prior drug convictions to the jury – Cisneros likewise was not prejudiced by counsel's failure to raise that issue on direct appeal.  The trial court allowed the Government to publish evidence to the jury of Cisneros's prior conviction for possession with intent to distribute marihuana. CR Dkt. No. 536-2, pp. 53-55.   The Court concluded that such evidence met the standard for introduction under Fed. R. Evid. 404(b). <u>Id</u>.   Under Rule 404(b), the Government can introduce evidence of a prior conviction for the same offense to show that the defendant had a similar intent to commit that offense in the instant case. <u>See</u> <u>U.S. v. Arnold</u>, 467 F.3d 880, 884-886 (5th Cir. 2006) (Government could introduce evidence of a 1995 conviction for possessing crack cocaine in a 2004 prosecution for possession with intent to distribute crack cocaine).

In this case, Cisneros's prior conviction for possession with intent to distribute marihuana was probative of whether he possessed with the intent to distribute marihuana in the instant case. <u>Id</u>.  Thus, Cisneros would not have prevailed on this claim.

His claim of ineffective assistance of appellate counsel should be denied.

The Court further notes that the Government has argued that the claims regarding judicial bolstering, the submission of the full transcript to the jury and the jury instructions regarding the burden of proof are procedurally defaulted. Dkt. No. 27, p. 36.  All of those claims could have been raised on direct appeal; thus, Cisneros must demonstrate cause for not raising them at that stage and actual prejudice. <u>U.S. v. Shaid</u>, 937 F.2d 228, 232 (5th Cir.1991) (en banc).  Ineffective assistance of appellate counsel satisfies the cause and prejudice standard. <u>U.S. v. Williams</u>, 476 F. App'x 1, 2 (5th Cir. 2012) (unpubl.) (citing <u>U.S. v. Pierce</u>, 959 F.2d 1297, 1301 (5th Cir. 1992)).  Given that Cisneros's claim of ineffective assistance of counsel is not supported by the facts or the case law, he cannot meet this cause and prejudice standard. <u>U.S. v. Ivy</u>, 77 F.3d 477 (5th Cir. 1995).

Accordingly, the Court should find that those three claims are procedurally defaulted, and if not defaulted, they remain substantively meritless.

## B. Untimely Filed Claims

There are three claims that Cisneros raised for the first time in his petition filed on February 5, 2018: (1) trial counsel was ineffective for failing to challenge the imposition of the § 851 enhancement; (2) trial counsel was ineffective for failing to collaterally attack the prior state conviction that formed basis of § 851 enhancement; and (3) Belmontes lied about the full extent of his agreement with the Government. Dkt. No. 1.  These claims are untimely filed and substantively meritless.

### 1. Timeliness

Under the statute of limitations found at 28 U.S.C. § 2255(f), it seems clear that those three claims are untimely filed.  The Court must determine which of the § 2255(f)'s provisions apply to start the limitations period.

If the limitations period begins to run on "the date on which the judgment of conviction becomes final," then the limitations period expired on August 11, 1998.  As previously noted, Cisneros's conviction became final on August 11, 1997, when the deadline to file a certiorari petition expired. Olvera, 775 F.3d at 729.  Thus, Cisneros had until August 11, 1998, to timely file the petition under § 2255(f)(1).

Section 2255(f)(2) would appear to be inapplicable in this case; there is no evidence in the record showing that Cisneros "was prevented from making a motion by such governmental action."

As to § 2255(f)(3), Cisneros is not relying on a newly recognized constitutional right as the substantive basis for relief.  The "right asserted" in § 2255(f)(3) refers to "the substantive right that forms the basis for the § 2255 motion, rather than a procedural right related to the timing or manner in which the § 2255 motion is filed." Outler v. U.S., 485 F.3d 1273, 1280 (11th Cir. 2007).  The claims made by Cisneros in his petition are not newly recognized.  As to the claims regarding the § 851 enhancement, defendants have long been entitled to effective assistance of counsel at sentencing. See Gardner v. Fla., 430 U.S. 349, 358 (1977) ("sentencing is a critical stage of the criminal proceeding at which he

is entitled to the effective assistance of counsel").  As to the claims regarding Belmontes, a defendant's due process right to disclosure of evidence of Governmental promises to a witness was established by the Supreme Court in 1972. Giglio v. U.S., 405 U.S. 150 (1972). The legal predicates for this claim pre-dates Cisneros's trial, so he cannot benefit from any extended statute of limitations under § 2255(f)(3).

As to § 2255(f)(4), the factual predicates for Cisneros's claims could have been discovered long ago.  As to the claims regarding the § 851 enhancement, Cisneros would have been aware of the enhancement and the lack of objections immediately after the sentencing hearing.  As to Belmontes, the Court notes that Belmontes's sentence was reduced on September 26, 1997. CR Dkt. No. 587.  The record clearly indicates that Belmontes was on supervised release in 2000, showing that he was released from prison by then. See CR 181, Dkt. No. 618 (petition to revoke Belmontes's supervised release, listing actions taken by Belmontes in July through September 2000 while on supervised release).  The Court notes that § 2255(f)(4) is only applicable if the petitioner exercised due diligence in seeking out the underlying factual predicate. U.S. v. Rodriguez, 858 F.3d 960, 962 (5th Cir. 2017).  At the July 2019 evidentiary hearing, Cisneros never identified a date when he finally learned that Belmontes had received a reduced sentence.

The underlying facts supporting Cisneros's claim — that Belmontes received a further reduction in his sentence — "could have been discovered through the exercise of due diligence" in 2000. Rodriguez, 858 F.3d at 963.  Even if the Court concluded that Cisneros's imprisonment may have slowed down his ability to ascertain this claim, he could have timely discovered this claim, through the exercise of due diligence, no later than 2001.  Even if the Court grants Cisneros the widest possible latitude, he would have had until 2002 to timely file the claim under § 2255(f)(4).

In sum, the statute permits Cisneros to file from the latest date afforded by § 2255(f)(1)-(4).  As to the claims regarding the § 851 enhancement, they should have been filed no later than August 11, 1998, under § 2255(f)(1).  Cisneros's claim that the Government failed to disclose the additional agreement with Belmontes should have been filed by 2002, under § 2255(f)(4).  Cisneros did not file his petition until February 5, 2018,

long after these deadlines had passed.  For those reasons, his petition is not timely filed.
The Court must now consider whether the claim can be considered an amendment which
relates back to the timely filed petitions.

### a. Amendment

The Court has previously noted that the April 1998 <u>habeas</u> petition was timely filed.
If any of these claims are considered an amendment to that <u>habeas</u> petition, then the claim
would be considered timely filed.  After reviewing the record and the case law, the Court
concludes that these claims cannot be considered as timely-filed amendments.

As previously noted, FED. R. CIV. P. 15 applies in <u>habeas</u> proceedings. <u>Saenz</u>, 282
F.3d at 356.  As relevant here, an amended pleading "relates back to the date of the original
pleading" when "the amendment asserts a claim or defense that arose out of the conduct,
transactions, or occurrence set out – or attempted to be set out – in the original pleading."
FED. R. CIV. P. 15(c)(1)(B).

To restate the law, briefly, an amendment to a <u>habeas</u> petition does not automatically
relate back because it arose out of the same trial, conviction, or sentence as the original
petition. <u>Mayle</u>, 545 U.S. at 660-62.  If the amended claim asserts "a new ground for relief
supported by facts that differ in both time and type from those the original pleading set
forth," then the amendment does not relate back and is time barred. <u>Id.</u>, at 650.  For
example, all claims of ineffective assistance of counsel do not automatically relate back to
each other. <u>Gonzalez</u>, 592 F.3d at 680.  Accordingly, the Court must examine both the
original petition and the amended claim.

As to the claims regarding the § 851 enhancement, the original 1998 petition
claimed that his lawyer was ineffective for advising him to reject the plea agreement on the
grounds that his deferred adjudication conviction would not be considered a predicate prior
conviction. <u>Second Habeas</u>, Dkt. No. 10, p. 9.  In the instant petition, Cisneros argues that
his lawyer was ineffective for not objecting to the legality of the § 851 enhancement as
well as for not collaterally attacking the legality of the deferred adjudication. Dkt. Nos. 1,
2.  The 1998 claim differs in time and type from the 2018 claims.  The 1998 claim was
about whether his lawyer was effective in advising him to go to trial.  The 2018 claims are

whether his lawyer was an effective advocate at sentencing.  The 2018 claims cannot be considered an amendment to the 1998 petition.

As to the Belmontes claim, the result is the same.  In his 1998 original petition, Cisneros made no substantive allegations regarding a secret deal between the Government and Belmontes, but noted that Belmontes was an admitted cocaine user who agreed to testify in exchange for a Government recommendation of "a sentence not to exceed nine years." Second Habeas Dkt. No. 11, p. 14.  In a timely-filed amendment – also in 1998 – to his original petition, Cisneros alleged that the Government violated 18 U.S.C. § 201(c)(2) when it offered Belmontes leniency in exchange for his testimony. Second Habeas Dkt. No. 16, p. 3.  That statute prohibits "the giving, offering or promising anything of value to a witness for or because of his testimony." U.S. v. Haese, 162 F.3d 359, 366 (5th Cir. 1998).  Thus, the crux of the claim was that the testimony was obtained illegally because the Government gave Belmontes something of value – a recommendation for a reduced sentence – in exchange for his testimony.  Under this theory, all of Belmontes's testimony was illegally obtained, and therefore, was inadmissible.[9]

Under the claim brought in the 2018 amendment, Cisneros alleges that Belmontes had an additional agreement with the Government – for a further reduction in sentence – that was not disclosed to the defense or to the jury. Dkt. No. 13.  Under this theory, the Government's deal was legal, but Belmontes lied about its terms when he testified. Id.

Cisneros's 2018 amendment is different in type and facts from the 1998 claim.  The 1998 claim is based on a legal theory that it was illegal for the Government to enter into an agreement with Belmontes.  The 2018 amendment is based on a theory that the Government knowingly used perjured testimony.  This is a new and different ground for relief, for which reason it does not relate back to the timely-filed petition under Rule 15. Gonzalez, 592 F.3d

---

[9] The Court notes that the Fifth Circuit has held that § 201(c) does not apply to the Government reaching sentencing agreements with co-defendants in exchange for their testimony. Haese, 162 F.3d at 366.  At one point, a panel of the 10th Circuit Court of Appeals held that § 201(c) prohibited such agreements, but that holding was overturned by an en banc panel. U.S. v. Singleton, 144 F.3d 1343 (10th Cir. 1998), reh'g en banc granted, opinion vacated (July 10, 1998), on reh'g en banc, 165 F.3d 1297 (10th Cir. 1999).

at 680.  At this point, the Court must consider whether the application of <u>Castro</u> renders any of the claims timely filed.

### b. <u>Castro</u>

Cisneros argues that his petition should be considered timely filed, because the District Court's improper <u>sua</u> <u>sponte</u> recharacterization of his Rule 60(b)(6) motion in 1997 renders the instant petition timely filed. Dkt. No. 117, pp. 5-6.  This claim is unsupported by the case law.

It wasn't until 2003 that the Supreme Court held that district courts cannot recharacterize a motion as a § 2255 petition without first warning the petitioner that it was doing so and giving the petitioner the chance to amend or withdraw the petition. <u>Castro v. U.S.</u>, 540 U.S. 375 (2003).  If the district court adjudicated a recharacterized § 2255 petition without giving that warning, the recharacterized petition "will not count as a § 2255 motion for purposes of applying § 2255's 'second or successive' provision." <u>Castro</u>, 540 U.S. at 377.  In other words, an improperly recharacterized petition will not serve as a statutory bar to a subsequently filed petition. <u>Id</u>.

As applied to this case, the holding in <u>Castro</u> means that the 1997 petition — the Rule 60(b) motion that was recharacterized as a § 2255 petition — does not, by itself, prevent the Court from considering this petition.  In other words, § 2255(h) ensures that a petitioner typically only gets one bite at the <u>habeas</u> apple.  An improperly recharacterized motion is not considered an actual bite at that apple.

Nothing in <u>Castro,</u> however, indicates that it changes whether a petition is considered timely under § 2255(f).  Courts have opined that <u>Castro</u> does not impact the timeliness of a petition. <u>U.S. v. Cruz</u>, 2014 WL 4916406, *2-3 (M.D. Pa 2014); <u>U.S. v. Lai</u>, 2009 WL 29892, *3-4 (N.D. Ca 2009).  The Eleventh Circuit has concluded that <u>Castro</u> warnings must be given, even for recharacterized petitions that are untimely on their face under § 2255(f)(1). <u>Gooden v. U.S.</u>, 627 F.3d 846 (11th Cir. 2010).  Their reasoning was that

> while a re-characterized motion might be untimely under § 2255(f)(1), it is possible for future events to render a subsequent § 2255 motion timely under § 2255(f)(2)-(4). As a result, a pro se litigant, if afforded Castro notice, might decide to withdraw a re-characterized § 2255 motion and wait for future events to re-start the statute of limitations period. If a pro se litigant is not afforded such notice, however, he or she might very well remain unaware of this option. Castro forbids such ignorance.

Gooden, 627 F.3d at 848.  Thus, the Gooden decision demonstrates that Castro does not alter the analysis as to whether a petition is timely under § 2255(f).

Cisneros claims that his petition is timely under the Fifth Circuit's decision in McDaniel v. U.S., 242 Fed. App'x. 217 (5th Cir. 2007) (unpubl.).  The facts in that case are very similar to the instant case: the defendant filed a motion in 1996, which the district court sua sponte recharacterized as a § 2255 petition and denied the petition. Id.  The defendant's subsequent petitions were denied as successive petitions. Id.  The Fifth Circuit held that because the defendant was not given the opportunity to amend or withdraw her 1996 motion, it could not be counted as a first habeas petition and any subsequent petitions could not be considered successive. Id.

The reasoning of McDaniel holds true in this case; the Fifth Circuit cited McDaniel when holding that Cisneros did not require its permission to file another habeas petition. In re: Cisneros, Case No. 17-40758 (5th Cir. 2017).  McDaniel, however, never held, either explicitly or implicitly, that the defendant's petition was timely filed.  It merely held that the most recent petition was not considered a subsequent petition.

Put another way, Castro and its progeny – including McDaniel – address whether a petition is considered a second or successive petition under § 2255(h)(1)-(2).  Those decisions do not address whether a petition is timely filed under § 2255(f)(1)-(4).  In fact, none of those decisions cite, discuss, or analyze § 2255(f). The proper application of Castro does not render the filing timely.  Instead, the question must turn on whether equitable tolling is appropriate.

### c. Equitable Tolling

For equitable tolling to be appropriate, Cisneros must pursue his rights diligently. U.S. v. Wheaten, 826 F.3d 843, 851 (5th Cir. 2016).  While Cisneros is required to show that he exercised "reasonable diligence[,]" he is not required to prove "maximum feasible diligence." Holland v. Fla., 560 U.S. 631, 653 (2010).  Nevertheless, under any standard, Cisneros failed to exercise the required diligence.

As to the claims regarding the § 851 enhancement, Cisneros would have been aware of the facts underlying those claims as soon as he was sentenced, yet he did not raise them until more than 20 years had elapsed after sentencing.  If this can be considered due diligence, then the statute of limitations loses all force.

As previously noted, with the exercise of due diligence, Cisneros could have been aware that Belmontes was released early from prison by 2001.

Since that time, Cisneros has filed numerous petitions and motions.  Yet, at no time did he raise this specific issue – that Belmontes had an additional, undisclosed deal with the Government – until March of 2018.  Well over a decade passed without Cisneros ever raising this claim.  Under no circumstances can that failure be considered reasonable diligence.

In short, Cisneros has not demonstrated reasonable diligence; for this reason, the Court does not need to reach the question of whether "rare and exceptional" circumstances are present. U.S. v. Perkins, 481 F. App'x 114, 119 (5th Cir. 2012).  No matter the standard applied, equitable tolling is not warranted in this case.

Even if any of these claims are considered timely filed, they are substantively meritless.

### 2. Legality of Sentencing Enhancement

Cisneros asserts that counsel "failed to object and/or challenge the constitutionality or legality" of his life sentence based on the § 851 enhancement. Dkt. No. 126, p. 28.  This claim should be denied.

As an initial matter, Cisneros's counsel objected to the imposition of the § 851 enhancement on the basis that the deferred adjudication was not a conviction for purposes

of the enhancement. CR Dkt. No. 552, pp. 13-16.  The fact that the argument was ultimately unsuccessful does not mean counsel was ineffective. Chandler v. U.S., 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.").

Cisneros does not identify the basis for a constitutional attack on the legality of § 851.  As such, his argument is conclusory and can be rejected on that basis.  "Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000).

Additionally, any argument that § 851 was unconstitutional would have ultimately failed.  Albeit in cases decided after Cisneros's trial, the Supreme Court has upheld the constitutionality of § 851. See U.S. v. Mata, 491 F.3d 237, 245 (5th Cir. 2007) (noting that any argument that § 851 is unconstitutional is foreclosed by the Supreme Court's decisions in Almendarez–Torres v. U.S., 523 U.S. 224 (1998), and Apprendi v. New Jersey, 530 U.S. 466 (2000)).  This claim is meritless and should be denied.

### 3. Objection to Validity of Prior Convictions

Cisneros asserts that counsel was ineffective for failing to collaterally attack one of his prior convictions that formed the predicate of his § 851 enhancement.  Cisneros alleges that his 1989 drug conviction was invalid because his guilty plea was involuntary and "based upon ineffective assistance of counsel." Dkt. No. 1-1, p. 4.  This claim is foreclosed as a matter of law.

A defendant may not collaterally attack a prior conviction for purposes of § 851 if the conviction "occurred more than five years before the date of the information alleging such prior conviction." § 851(e).  The Fifth Circuit has found that § 851(e) "is a reasonable limitation on defendants to effectuate the purposes of sentence enhancement for recidivists and to eliminate a host of problems with respect to ancient or destroyed records." U.S. v. Gonzales, 79 F.3d 413, 426 (5th Cir. 1996).  Indeed, the Fifth Circuit has held that § 851(e) is a constitutional use of Congress's authority to limit collateral attacks on prior convictions. Id.

In this case, the information alleging the prior convictions was entered on June 1, 1995. CR Dkt. No. 335.  Thus, under § 851(e), Cisneros could collaterally attack any conviction that occurred after June 1, 1990.  In the previous state matter, Cisneros was arrested on January 15, 1988, and was convicted on February 27, 1989. CR Dkt. No. 445, p. 16.  Given the 5 year limitation, Cisneros could not collaterally attack the 1989 conviction for purposes of avoiding the life sentence under § 851.

The only exception to this limitation is that a defendant can attack a prior conviction outside of the five-year window if he can show that no counsel was appointed to represent him in the underlying proceeding. Gonzales, 79 F.3d at 426.  Cisneros argued that his counsel in the state criminal proceedings was ineffective rather than non-existent. Dkt. No. 1-1, p. 4.  Accordingly, this exception is inapplicable.

Because any collateral attack was statutorily foreclosed, counsel was not ineffective for failing to object. See Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) (counsel does not render ineffective assistance by failing to make meritless objections).  This claim should be denied.

### 4. Undisclosed Agreement

Cisneros alleges that Belmontes lied about the full extent of his agreement with the Government.  This claim is not supported by the record.

In order for Cisneros to be entitled to relief, he must show: (1) Belmontes testified falsely about his dealings with the Government; (2) the false testimony was material; and, (3) the Government knew that the testimony was false. Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (citing Giglio v. U.S., 405 U.S. 150, 153-54 (1972)).  Given that this claim revolves around a secret deal between Belmontes and the Government, the first and third elements are necessarily intertwined; if Belmontes testified falsely about his deal, the Government would have known it.  The Court will further assume that if Belmontes testified falsely, that such testimony was material.  What the record does not show, however, is that Belmontes testified falsely.

Belmontes disclosed to the jury that he had participated in the illegal activity and that he had agreed to testify against Cisneros – as well as anyone else that the Government

asked him to – in exchange for the Government recommending a sentence of no more than nine years. CR Dkt. No. 533-1, pp. 91-93.  As previously noted, AUSA Lewis was the prosecutor in this case and was the one who reached the agreement with Belmontes. CR Dkt. No. 266.  On September 11, 1995, Belmontes was sentenced to 108 months imprisonment and five years of supervised release. Dkt. No. 522.

On September 26, 1997, the Government filed a Rule 35 motion, seeking an additional downward departure in Belmontes's sentence. CR Dkt. No. 586.  The motion was signed by a different prosecutor – AUSA Reed – and it outlined the assistance provided by Belmontes in three additional cases after he had testified against Cisneros. Id.  There is no indication in the record that Belmontes was scheduled to or planned to testify in those trials at the time that he testified in Cisneros's trial.  The motion sought a sentence reduction "in light of Arnoldo Belmontes' accomplished and continuing cooperation" in those three cases. Id. (emphasis added).  The motion was granted that same day, reducing the sentence to 54 months. CR Dkt. No. 587.

Lewis testified that he was not involved in the filing of the Rule 35 motion. Dkt. No. 86, p. 37.  Lewis further testified that while he had no independent recollection of the conversation and that Reed reminded Lewis that Lewis was "not pleased," in 1997, when Reed informed Lewis, that a Rule 35 motion was going to be filed. Id.  While the statement concerning Reed's memory is hearsay, Cisneros did not object to this testimony.  Such unobjected to hearsay, "may be considered by the trier of fact for such probative value as it may have." Bellard v. Gautreaux, 675 F.3d 454, 461 (5th Cir. 2012) (quoting Whitehead v. Food Max of Miss. Inc., 163 F.3d 265, 275 (5th Cir. 1998)).  Given that this statement is some of the only evidence the Court has concerning whether a secret deal existed between Belmontes and the Government, the Court finds that it has some probative value.

Cisneros has provided no evidence, beyond his own conjecture, to show that a deal for the Rule 35 motion existed at the time of trial.  Cisneros testified that an unidentified man, "Jose Angel", a fellow prisoner with Cisneros, told him of the secret deal. Dkt. No. 86, p. 126.  Cisneros testified that Jose Angel was in the county jail at the same time as Belmontes and that Belmontes told this man that, while he [Belmontes] was sentenced for

9 years, "he wasn't going to do more than three because he and his attorney had cut a deal with the Government." Id.

The Court afforded Cisneros additional time to find and call "Jose Angel" as a witness. Dkt. Nos. 86, p. 145; 88, pp. 1-2; 96, pp. 6-11, 78-79.  Cisneros did not call him as a witness, and it is unclear whether he was ever found.  The Court gives no evidentiary weight, under those circumstances, to anything that this witness is alleged to have said. See Bellard, 675 F.3d at 461 (the Court has permission to consider unobjected to hearsay, but is not required to do so).

Cisneros further argues that Assistant U.S. Attorney John Patrick Smith appeared in the drug case as well as the other cases where Belmontes testified, so he must have known about the secret deal. See Dkt. No. 117, p. 11 (stating that while Lewis "may have been surprised" by the Rule 35 motion, Smith "cannot claim the same").  There is no evidence in the record of Smith's knowledge. Cisneros is assuming that a deal existed and then using Smith's participation in multiple prosecutions to prove that he must have known about it; the entire argument assumes facts that are not in evidence and without viable support.

Based upon the totality of the record, the Court finds that there is no credible evidence that Belmontes falsely testified about any deal with the Government.  This claim should be denied as meritless.

## IV.  Recommendation

It is recommended that the Petitioner Juan Gabriel Cisneros's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be denied.

The Court should deny the following timely-filed claims as unsupported by the record: (1) trial counsel was ineffective for failing to advise him that he faced a likely life sentence if he went to trial and lost because of the § 851 enhancement; (2) trial counsel was ineffective for failing to object to bolstering of witness testimony by the Government and the trial judge; (3) trial counsel was ineffective for failing to object to the jury instructions; (4) trial counsel was ineffective for failing to investigate and interview witnesses; and (5) ineffective assistance of appellate counsel.

The Court should deny the following claims as timely filed, but procedurally defaulted and, alternatively, as unsupported by the record: (6) the trial judge impermissibly bolstered the testimony of Government witnesses; (7) the jury was not properly instructed on the Government's burden of proof; and (8) Cisneros was denied due process of law when the trial court submitted more information to the jury during deliberations than was originally requested.

The Court should deny the following claims as untimely filed, and alternatively, as unsupported by the record: (9) trial counsel was ineffective for failing to challenge the imposition of the § 851 enhancement; (10) trial counsel was ineffective for failing to collaterally attack the prior state conviction that formed basis of § 851 enhancement; and (11) Belmontes lied about the full extent of his agreement with the Government.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Cisneros's § 2255 motion and the applicable Fifth Circuit precedent, it is recommended that a certificate of appealability should be denied. Although Cisneros's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**B. Notice to Parties**

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on September 23, 2020.

_____
Ronald G. Morgan
United States Magistrate Judge

**EXHIBIT A**

| Page | Questioning by Judge | Total Lines |
|---|---|---|
| 63 | 5 | 25 |
| 64 | 0 | 25 |
| 65 | 7 | 25 |
| 66 | 0 | 25 |
| 67 | 0 | 25 |
| 68 | 3 | 25 |
| 69 | 0 | 25 |
| 70 | 12 | 25 |
| 71 | 5 | 25 |
| 72 | 11 | 25 |
| 73 | 5 | 25 |
| 74 | 12 | 25 |
| 75 | 0 | 25 |
| 76 | 2 | 25 |
| 77 | 0 | 25 |
| 78 | 9 | 25 |
| 79 | 4 | 25 |
| 80 | 6 | 25 |
| 81 | 0 | 25 |
| 82 | 0 | 25 |
| 83 | 0 | 25 |
| 84 | 5 | 25 |
| 85 | 25 | 25 |
| 86 | 5 | 25 |
| 87 | 5 | 25 |
| 88 | 0 | 25 |
| 89 | 0 | 25 |
| 90 | 0 | 25 |
| 91 | 0 | 0 |
| 92 | 0 | 0 |
| 93 | 0 | 0 |
| 94 | 5 | 5 |

**DIRECT EXAMINATION**

| Page | QBJ | Total Lines |
|---|---|---|
| 95 | 0 | 25 |
| 96 | 0 | 25 |
| 97 | 0 | 25 |
| 98 | 0 | 25 |
| 99 | 0 | 25 |
| 100 | 0 | 25 |
| 101 | 0 | 25 |
| 102 | 0 | 25 |
| 103 | 0 | 25 |
| 104 | 0 | 25 |
| 105 | 0 | 25 |
| 106 | 3 | 25 |
| 107 | 0 | 25 |
| 108 | 0 | 25 |
| 109 | 0 | 25 |
| 110 | 0 | 25 |
| 111 | 0 | 25 |
| 112 | 0 | 25 |
| 113 | 5 | 25 |
| 114 | 0 | 25 |
| 115 | 5 | 25 |
| 116 | 5 | 25 |
| 117 | 0 | 25 |
| 118 | 0 | 25 |
| 119 | 0 | 25 |
| 120 | 2 | 25 |
| 121 | 0 | 25 |
| 122 | 0 | 25 |
| 123 | 0 | 25 |
| 124 | 0 | 25 |
| 125 | 0 | 25 |
| 126 | 0 | 25 |

| Page | QBJ | Total Lines |
|---|---|---|
| 127 | 0 | 25 |
| 128 | 0 | 25 |
| 129 | 0 | 25 |
| 130 | 0 | 25 |
| 131 | 2 | 25 |
| 132 | 16 | 25 |
| 133 | 0 | 25 |
| 134 | 0 | 25 |
| 135 | 0 | 25 |
| 136 | 0 | 25 |
| 137 | 0 | 25 |
| 138 | 0 | 25 |
| 139 | 0 | 25 |
| 140 | 0 | 25 |
| 141 | 7 | 25 |
| 142 | 5 | 25 |
| 143 | 0 | 25 |
| 144 | 5 | 25 |
| 145 | 11 | 25 |
| 146 | 0 | 25 |
| 147 | 0 | 25 |
| 148 | 0 | 25 |
| 149 | 4 | 25 |
| 150 | 6 | 25 |
| 151 | 22 | 25 |
| 152 | 25 | 25 |
| 153 | 20 | 25 |
| 154 | 0 | 2 |
| 155 | 0 | 25 |
| 156 | 0 | 25 |
| 157 | 0 | 25 |
| 158 | 0 | 25 |

DIRECT EXAMINATION -- CONT.

| Page | QBJ | Total Lines |
|---|---|---|
| 159 | 0 | 25 |
| 160 | 10 | 25 |
| 161 | 0 | 25 |
| 162 | 15 | 25 |
| 163 | 8 | 25 |
| 164 | 2 | 25 |
| 165 | 1 | 25 |
| 166 | 8 | 25 |
| 167 | 14 | 25 |
| 168 | 25 | 25 |
| 169 | 3 | 25 |
| 170 | 0 | 17 |
| 171 | 0 | 0 |
| 172 | 0 | 25 |
| 173 | 0 | 25 |
| 174 | 0 | 25 |
| 175 | 0 | 25 |
| 176 | 0 | 25 |
| 177 | 0 | 25 |
| 178 | 24 | 25 |
| 179 | 25 | 25 |
| 180 | 7 | 25 |
| 181 | 25 | 25 |
| 182 | 2 | 25 |
| 183 | 0 | 25 |
| 184 | 2 | 25 |
| 185 | 0 | 25 |
| 186 | 0 | 0 |
| 187 | 0 | 20 |
| 188 | 2 | 25 |
| 189 | 7 | 25 |
| 190 | 7 | 25 |

| Page | QBJ | Total Lines | PERCENTAGE |
|---|---|---|---|
| 191 | 11 | 25 | |
| 192 | 4 | 25 | |
| 193 | 10 | 25 | |
| 194 | 0 | 25 | |
| 195 | 0 | 25 | |
| 196 | 0 | 6 | |
| 197 | 0 | 0 | |
| 198 | 0 | 3 | |
| 199 | 0 | 25 | |
| 200 | 0 | 25 | |
| TOTAL | 477 | 3103 | 15.37% |

## CROSS EXAMINATION

| Page | OBJ | Total Lines | Page | OBJ | Total Lines | Page | OBJ | Total Lines |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 201 | 0 | 5 | 233 | 0 | 25 | 265 | 0 | 25 |
| 202 | 0 | 25 | 234 | 9 | 25 | 266 | 0 | 25 |
| 203 | 0 | 25 | 235 | 0 | 25 | 267 | 0 | 2 |
| 204 | 10 | 25 | 236 | 0 | 25 | 268 | 0 | 6 |
| 205 | 5 | 25 | 237 | 16 | 25 | 269 | 2 | 25 |
| 206 | 0 | 25 | 238 | 0 | 25 | 270 | 0 | 25 |
| 207 | 0 | 25 | 239 | 0 | 25 | 271 | 0 | 25 |
| 208 | 0 | 25 | 240 | 0 | 25 | 272 | 0 | 25 |
| 209 | 0 | 25 | 241 | 0 | 25 | 273 | 0 | 25 |
| 210 | 0 | 25 | 242 | 0 | 25 | 274 | 0 | 25 |
| 211 | 0 | 25 | 243 | 2 | 25 | 275 | 0 | 25 |
| 212 | 0 | 25 | 244 | 0 | 25 | 276 | 0 | 25 |
| 213 | 0 | 25 | 245 | 0 | 25 | 277 | 0 | 25 |
| 214 | 5 | 25 | 246 | 0 | 25 | 278 | 3 | 25 |
| 215 | 0 | 25 | 247 | 2 | 25 | 279 | 3 | 25 |
| 216 | 0 | 25 | 248 | 1 | 25 | 280 | 3 | 25 |
| 217 | 0 | 25 | 249 | 0 | 25 | 281 | 0 | 25 |
| 218 | 0 | 25 | 250 | 0 | 25 | 282 | 0 | 25 |
| 219 | 0 | 25 | 251 | 0 | 2 | 283 | 0 | 25 |
| 220 | 0 | 25 | 252 | 0 | 13 | 284 | 0 | 25 |
| 221 | 0 | 25 | 253 | 0 | 25 | 285 | 0 | 25 |
| 222 | 22 | 25 | 254 | 0 | 25 | 286 | 0 | 25 |
| 223 | 0 | 25 | 255 | 0 | 25 | 287 | 0 | 25 |
| 224 | 18 | 25 | 256 | 0 | 25 | 288 | 0 | 25 |
| 225 | 0 | 25 | 257 | 0 | 25 | 289 | 6 | 25 |
| 226 | 3 | 25 | 258 | 0 | 25 | 290 | 0 | 25 |
| 227 | 0 | 25 | 259 | 0 | 25 | 291 | 0 | 25 |
| 228 | 10 | 25 | 260 | 0 | 25 | 292 | 0 | 25 |
| 229 | 23 | 25 | 261 | 0 | 25 | 293 | 0 | 25 |
| 230 | 25 | 25 | 262 | 0 | 25 | 294 | 0 | 25 |
| 231 | 11 | 25 | 263 | 0 | 25 | 295 | 0 | 25 |
| 232 | 0 | 25 | 264 | 0 | 25 | 296 | 0 | 25 |

## CROSS EXAMINATION -- CONT.

| Page | OBJ | Total Lines |
|------|-----|-------------|
| 297 | 0 | 25 |
| 298 | 0 | 25 |
| 299 | 0 | 25 |
| 300 | 0 | 25 |
| 301 | 0 | 25 |
| 302 | 0 | 21 |
| 303 | 0 | 0 |

| TOTAL OBJ | TOTAL | PERCENTAGE |
|-----------|-------|------------|
| 176 | 2449 | 7.19% |